STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Brian D. SEEFELDT, Defendant-Appellant.

Supreme Court

*No. 01–1969–CR. Oral argument February 18, 2003.—Decided May 28, 2003.*

2003 WI 47

(Also reported in 661 N.W.2d 822.)

For the plaintiff-respondent-petitioner the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Donald T. Lang,* assistant state public defender.

¶ 1. ANN WALSH BRADLEY, J.   The petitioner, State of Wisconsin, seeks review of a published court of appeals decision that reversed a judgment of conviction against Brian D. Seefeldt.[1] The State contends that the court of appeals erred in concluding that Seefeldt's second trial violated his constitutional protection against double jeopardy. Because the State did not meet its burden of showing a manifest necessity for the termination of the first trial, we determine that the circuit court erred in granting the State's motion for

---

[1] *State v. Seefeldt,* 2002 WI App 149, 256 Wis. 2d 410, 647 N.W.2d 894 (reversing a judgment and order of the circuit court of Fond du Lac County, Steven W. Weinke, Judge). The court of appeals also reversed the circuit court's order denying postconviction relief.

mistrial. Accordingly, we agree with the court of appeals that the second trial violated Seefeldt's protection against double jeopardy.[2] We therefore affirm.

I

¶ 2.  Seefeldt was a passenger in a car that was stopped by police officers. His girlfriend, Michelle Bart, was the driver of the car. A police officer testified that he stopped the vehicle and ordered Bart and Seefeldt to exit the vehicle. When they did not exit, the officer reached into the car and attempted to remove the keys. At that point, Bart put the car into gear and a high-speed chase ensued. The chase ended when the car spun out of control and became stuck in a snow bank.

¶ 3.  A search of the car and Seefeldt revealed a revolver, some ammunition, brass knuckles, marijuana, cocaine, and drug paraphernalia. Seefeldt was charged with one count of possession with intent to deliver marijuana, one count of possession of drug paraphernalia, one count of possession of cocaine with intent to deliver, and two counts of carrying a concealed weapon.

¶ 4.  During opening statements in Seefeldt's first jury trial, the prosecutor notified the jurors that Bart would be providing testimony and described Bart as follows:

---

[2] Seefeldt also argues that his right to counsel of his choice was violated when the trial court granted the prosecutor's request to remove his retained counsel from the case, his due process rights were violated when the prosecutor elicited testimony disclosing that Seefeldt invoked his right to counsel, and his right to a fair trial was violated when the prosecutor made an improper comment during closing arguments. Because the double jeopardy issue is dispositive, we need not address these issues.

389

She is a person who you will hear about and obviously recognize, in terms of her dress, had been held accountable for her actions. She will tell you that she saw Mr. Seefeldt sell cocaine. She will tell you that she saw Mr. Seefeldt bring five pounds of marijuana to this community.

¶ 5. Defense counsel also referenced Bart in his opening statement and made a comment regarding the existence of multiple warrants for Bart's arrest:

Now, the evidence is also going to show that the second car was being driven by this Michelle, Brian's girlfriend. Now, at that point . . . the officers exit the car. Apparently they had their guns drawn on this vehicle. Michelle Bart had, at that time, I believe, 15 warrants for her arrest that were out there from around the state of Wisconsin, mostly from writing bad checks in places.

¶ 6. The State objected to the statement regarding the 15 warrants and moved for a mistrial, claiming that defense counsel had violated a pretrial order prohibiting the introduction of other acts evidence without first seeking a ruling on the admissibility of the evidence. The pretrial order was not transcribed or otherwise memorialized in the record.

¶ 7. During a hearing to determine whether a mistrial should be ordered, the State noted that most of the warrants were for ordinance violations. It contended that the defense counsel's statement improperly presented other acts evidence to the jury and was sufficiently prejudicial to warrant a mistrial.[3]

---

[3] Wisconsin Stat. § 904.04(2) provides:

(2) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

¶ 8.  Defense counsel countered that the statement did not constitute impermissible other acts evidence because the warrants provided a motive for Bart's decision to flee. According to defense counsel, this information was necessary to bolster Seefeldt's defense theory that Bart was the party who made the decision to flee and not Seefeldt. The existence of the warrants explained why Bart would engage in a high speed chase to avoid being arrested. Counsel asserted that because the nature of the warrants could be explained by the prosecution during trial, the statement regarding the warrants was not prejudicial.

¶ 9.  The court determined that defense counsel had violated the pretrial order and that a curative instruction could not remove the prejudicial impact of the statement. As a result, it granted the State's motion for mistrial. It also granted the State's motion to disqualify Seefeldt's retained counsel. Subsequently, replacement counsel was appointed and a new trial was commenced. The jury in the second trial found Seefeldt guilty of the lesser offense of possession of marijuana and on each of the other four charges.

¶ 10.  At a postconviction hearing, Seefeldt's postconviction counsel argued that the mistrial order was too extreme a remedy. He also asserted that the record was ambiguous as to what the original defense counsel had been told prior to the commencement of trial regarding the use of other acts evidence. The circuit court responded that it "may be ambiguous to you but it was not ambiguous to the Prosecutor, to the Court, and

therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

to [the original defense counsel]." Seefeldt's postconviction motion was summarily denied and he appealed.

¶ 11. The court of appeals addressed the issue of whether the second trial violated Seefeldt's protection against double jeopardy. Citing *State v. Barthels,* 174 Wis. 2d 173, 184, 495 N.W.2d 341 (1993), the court determined that it should give strict and searching scrutiny to the circuit court's mistrial order because the mistrial request was made by the prosecutor over the objection of the defense. *State v. Seefeldt,* 2002 WI App 149, ¶ 15, 256 Wis. 2d 410, 647 N.W.2d 894. Using this standard, it concluded that the State failed to demonstrate a manifest necessity to terminate the first trial. *Id.* at ¶ 29. According to the court, there was no showing of a manifest necessity because evidence regarding the existence of the 15 warrants ultimately would have been admissible during trial. *Id.* at ¶ 27. Thus, the jury was not tainted and there was no manifest necessity to terminate the trial. *Id.*

¶ 12. Accordingly, the court determined that Seefeldt's second trial violated his constitutional protection against double jeopardy. *Id.* at 29. It reversed the judgment of conviction, and because the double jeopardy issue was dispositive, it did not address the other issues raised by Seefeldt. *Id.* at ¶ 28–29.

II

¶ 13. This case presents us with an opportunity to examine the constitutional protection against double jeopardy as it applies to the commencement of a second trial after the circuit court terminates the first trial prior to judgment. Specifically, we must determine whether the circuit court erred when it determined that

the State met its burden of showing the requisite manifest necessity to support the mistrial order that terminated Seefeldt's first trial. A circuit court's exercise of discretion in ordering a mistrial is accorded a level of deference that varies depending on the particular facts of the case. *Barthels,* 174 Wis. 2d at 184. Regardless of the level of deference to be applied, an appellate court must, at a minimum, satisfy itself that the circuit court exercised sound discretion in ordering a mistrial. *Arizona v. Washington,* 434 U.S. 497, 514 (1978).

¶ 14. We describe first the constitutional protection against double jeopardy and the manifest necessity standard used to determine whether a mistrial should be ordered. We then examine the level of deference that may be applied to a circuit court's mistrial order. Finally, we conclude that, regardless of the level of deference to be applied in this case, the circuit court erred in terminating Seefeldt's first trial. Accordingly, the second trial violated his protection against double jeopardy.

### III

¶ 15. The Fifth Amendment to the U.S. Constitution and Article I, Section 8 of the Wisconsin Constitution protect a criminal defendant from being placed in jeopardy twice for the same offense.[4] The underlying

---

[4] The Fifth Amendment to the U.S. Constitution provides: ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; . . . ." Article I, Section 8 of the Wisconsin Constitution provides that ". . . no person for the same offense may be put twice in jeopardy of punishment, . . . ." In construing Wisconsin's protection against double

purpose for this protection against double jeopardy is to prevent the State from using its resources and power to make repeated attempts to convict a person for the same offense. *Green v. United States,* 355 U.S. 184, 187–188 (1957); *Barthels,* 174 Wis. 2d at 181.

¶ 16. "Jeopardy" means exposure to the risk of determination of guilt. *State v. Comstock,* 168 Wis. 2d 915, 937, 485 N.W.2d 354 (1992). It attaches in a jury trial when the selection of the jury has been completed and the jury is sworn. *Id.* Accordingly, the protection against double jeopardy includes a defendant's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689 (1949); *Washington,* 434 U.S. at 503.

¶ 17. The protection against double jeopardy limits the ability of the State to request that a trial be terminated and restarted. This protection is important because the unrestricted ability of the State to terminate and restart a trial increases the financial and emotional burden on the defendant, extends the period during which the defendant is stigmatized by an unresolved accusation of wrongdoing and may increase the risk that an innocent defendant may be convicted. *Washington,* 434 U.S. at 502.

¶ 18. However, the prohibition against retrial is not a mechanical rule to be applied to prevent any second trial after the first trial is terminated prior to judgment. *Illinois v. Somerville,* 410 U.S. 458, 462

jeopardy, we are guided by the rulings of the U.S. Supreme Court. *State v. Barthels,* 174 Wis. 2d 173, 181, 495 N.W.2d 341 (1993).

(1973). We have recognized that criminal trials can be complicated and lengthy. *Barthels,* 174 Wis. 2d at 173. Numerous technical or otherwise unforeseen eventualities may arise that necessitate terminating a trial. *Id.* Treating the prohibition against retrial as a mechanical rule that prevents a second trial in all circumstances would " 'be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide.' " *Id.* (quoting *United States v. Jorn,* 400 U.S. 470, 479–480 (1971)).

¶ 19.   A defendant's right to have his or her trial concluded by a particular tribunal can be, under certain circumstances, subordinated to the public interest in affording the State one full and fair opportunity to present its evidence to an impartial jury. *Washington,* 434 U.S. at 505. Nevertheless, given the importance of the constitutional protection against double jeopardy, the State bears the burden of demonstrating a "manifest necessity" for any mistrial ordered over the objection of the defendant. *Id.* If a trial is terminated without manifest necessity and over the defendant's objection, the State is not permitted to commence a second trial against the defendant. "Manifest necessity" means a "high degree" of necessity. *Id.; Barthels,* 174 Wis. 2d at 183.

IV

¶ 20.   In this case, the judge granted the State's motion for a mistrial after the jury had been sworn. Seefeldt had objected to the State's motion. Accordingly, the granting of the mistrial implicated the interests protected by the double jeopardy clause. The State was

thus required to demonstrate that there was a manifest necessity to terminate the first trial. Before reviewing the record to analyze whether the State satisfied its burden, we first address the level of deference that attends a circuit court's mistrial order. We ultimately conclude, however, that regardless of the level of deference to be applied in this case, the circuit court did not exercise sound discretion in ordering the mistrial.

¶ 21. The State argues that the court of appeals erred in concluding that "strict and searching scrutiny" was warranted simply because the mistrial request was made by the prosecutor over the objection of defense counsel. Seefeldt, on the other hand, cites the following language from *Barthels* to support his position that strict scrutiny should be applied any time a prosecutor requests a mistrial:

> If, however, the prosecutor requests the mistrial, or the judge determines that the defendant's request was occasioned by prosecutorial overreaching or laxness, then this court gives stricter and more searching scrutiny to the judge's decision to grant a mistrial.

*Barthels,* 174 Wis. 2d at 173.

¶ 22. The State acknowledges that this ambiguous language could be construed to require strict scrutiny in all cases where the prosecutor requests the mistrial. It argues, however, that such a reading would be inconsistent with *Washington*. According to the State, a trial court's order granting a mistrial on motion of the prosecutor should be afforded great deference unless the prosecutor's request is preceded by misconduct, recklessness or overreaching designed to gain a tactical advantage. The State notes that *Barthels* correctly accorded strict scrutiny to the circuit court's exercise of discretion because the prosecutor had acted

396

recklessly in proceeding to trial without securing critical evidence and the prosecutor's reckless conduct precipitated the motion for a mistrial.

¶ 23.    In *Washington,* the U.S. Supreme Court described the level of deference to be used by an appellate court in reviewing a mistrial order. Similar to the case at bar, the trial judge in *Washington* granted a prosecutor's motion for a mistrial because defense counsel made improper remarks during his opening statement. However, unlike the case at bar, there was no legal theory under which the remarks could be deemed relevant and admissible at trial. *Washington,* 434 U.S. at 510–511.

¶ 24.    Following the opening statements in *Washington,* the prosecutor moved for a mistrial and a colloquy among the trial judge and the attorneys ensued. The trial judge withheld ruling on the mistrial motion until the following day when he heard additional arguments. After giving the parties a full opportunity to explain their arguments, the trial judge ordered a mistrial. *Id.* at 500–01.

¶ 25.    In discussing the appropriate level of deference to apply in reviewing the mistrial order, the *Washington* court noted that the question of whether a manifest necessity has been shown is answered more easily in some kinds of cases than in others. *Id.* at 507. It described two ends of the spectrum of deference. At one end are those cases in which the basis for the mistrial is the unavailability of critical prosecution evidence or there is reason to believe that the prosecutor is using the State's superior resources to harass the defendant or to achieve a tactical advantage. In such cases, an appellate court applies the strictest scrutiny to a trial judge's mistrial order. *Id.* at 508.

¶ 26. At the other end of the spectrum are cases in which the basis for the mistrial is the trial judge's belief that the jury is unable to reach a verdict. Often in such cases, the jury has been unable to reach a verdict after protracted and exhausting deliberations. Great deference is accorded to a trial court's exercise of discretion because the trial judge is best able to assess the risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. *Id.* at 509.

¶ 27. Having described the ends of the spectrum, the *Washington* court then returned to the case before it in which the mistrial was ordered because defense counsel made improper comments during his opening statement. It determined that the situation before the trial judge was similar to a deadlocked jury. The court stated that it was "persuaded that, along the spectrum of trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny, the difficulty which led to the mistrial in this case also falls in an area where the trial judge's determination is entitled to special respect." *Id.* at 510.

¶ 28. However, the conclusion that the trial judge's decision was entitled to great deference did not end the inquiry. Rather, because of the constitutional implications of double jeopardy, the *Washington* court recognized its obligation to satisfy itself that the trial judge exercised "sound discretion" in declaring a mistrial. The court concluded that sound discretion was exercised. *Id.* at 514. The trial judge had not acted hastily in response to the prosecutor's request for a mistrial. Rather, he gave both defense counsel and the prosecutor a full opportunity to explain their positions. The court found that the trial judge "acted responsibly

and deliberately, and accorded careful consideration to the [defendant's] interest in having the trial concluded in a single proceeding." *Id.* at 515.

¶ 29.   In *Barthels,* the Wisconsin Supreme Court applied the principles of *Washington* regarding appellate review of a mistrial order. The basis for the mistrial in *Barthels* was the prosecution's inability to produce a key medical witness. In reviewing the mistrial order, the court recognized that a trial judge is in the best position to determine whether circumstances warrant the granting of a mistrial. *Barthels,* 174 Wis. 2d at 183. However, it also recognized that the level of deference to be applied in reviewing this discretionary determination "varies according to the facts of the case." *Id.* at 184.

¶ 30.   Citing *Washington,* the court noted that the most stringent scrutiny is used by an appellate court when a mistrial is ordered because of the unavailability of critical prosecution evidence. *Id.* (citing *Washington,* 434 U.S. at 508). Accordingly, the court examined the circuit court's mistrial order with "marked strictness." *Id.* at 185.

¶ 31.   The *Barthels* court determined that the prosecutor did not act reasonably or take reasonable precautions in assuring the presence of the witness. *Id.* at 188–89. It therefore concluded that the circuit court erred in declaring a mistrial merely upon being informed of the unexcused absence of a witness. *Id.* at 189. The court also concluded that the circuit court failed to exercise appropriate discretion because it did not consider other alternatives to a mistrial. *Id.*

¶ 32.   In examining the mistrial order terminating Seefeldt's first trial, the court of appeals cited *Barthels* as support for its determination to give "strict and searching scrutiny" to the circuit court's decision to

grant a mistrial. *Seefeldt,* 256 Wis. 2d 410, ¶ 15. It stated that where "the prosecutor requests the mistrial, we give strict and searching scrutiny to the trial court's decision to grant a mistrial." *Id.*

¶ 33.  To the extent *Barthels* can be read to require strict scrutiny in all cases in which the prosecutor requests a mistrial, such a rule is clearly overbroad and inconsistent with the approach set forth in *Washington.* Indeed, the court in *Washington* accorded great deference to a mistrial order that resulted from a prosecution motion.

¶ 34.  We note that the difficulty that led to the mistrial in the case at bar was similar to the difficulty that led to the mistrial analyzed in *Washington.* However, we need not discern where along the spectrum the exact level of deference lies in this case, because, regardless of the level of deference, we determine that the circuit court did not exercise sound discretion in ordering the mistrial.

V

¶ 35.  As recognized in *Washington,* a determination that the trial judge's mistrial order is entitled to great deference does not end the inquiry. *Washington,* 434 U.S. at 514. More is needed. Considering the double jeopardy interests, the reviewing court must still satisfy itself that the trial judge exercised "sound discretion" in concluding that the State satisfied its burden of showing a "manifest necessity" for the mistrial.

¶ 36.  Sound discretion means acting in a rational and responsible manner. Sound discretion includes, without limitation, acting in a deliberate manner tak-

ing sufficient time in responding to a prosecutor's request for a mistrial. It requires giving both parties a full opportunity to explain their positions and considering alternatives such as a curative instruction or sanctioning counsel. Sound discretion is not exercised when the circuit court fails to consider the facts of record under the relevant law, bases its conclusion on an error of law or does not reason its way to a rational conclusion. *See State v. Davis*, 2001 WI 136, ¶ 28, 248 Wis. 2d 986, 637 N.W.2d 62.

**[20]**

¶ 37.　Sound discretion also requires that the trial judge ensure that the record reflects there is an adequate basis for a finding of manifest necessity. As such, sound discretion is more than a review to ensure the absence of a mistake of law or fact. Rather, a review for sound discretion encompasses an assurance that an adequate basis for the finding of manifest necessity is on the record.

■■■■

¶ 38.　We conclude that the trial judge did not exercise sound discretion for two reasons. First, the existence of Bart's 15 warrants would likely have been admissible during trial and the record does not reflect that the judge considered whether the evidence would ultimately be admissible. Second, the trial judge did not provide sufficient opportunity for the parties to present, and for the judge to consider, arguments regarding whether a mistrial should be ordered and the possible alternatives to a mistrial. As a result, the record does not contain an adequate basis for a finding of manifest necessity.

¶ 39.　The facts indicate that Seefeldt would have been able to present evidence of Bart's 15 warrants at trial. While Wis. Stat. § 904.04(2) (1999–2000) prevents

the admission of other acts evidence to prove a character trait in order to show that the person acted in conformity with the character trait, it does not exclude the evidence when offered for other purposes, such as motive. Seefeldt asserts that the existence of the warrants explained why Bart would engage in a high speed chase to avoid being arrested. Seefeldt also asserts that the warrants demonstrate her motive to shift blame and curry favor with the authorities by implicating Seefeldt. The State concedes that the warrant evidence, in some form, would probably have been admissible to show Bart's potential motive and bias.

¶ 40.   We recognize that it appears that defense counsel violated a pretrial order when he made the statement regarding Bart's 15 warrants. However, this is not a basis for a mistrial unless the violation creates that high degree of necessity required by the double jeopardy clause. While the trial judge may have been understandably troubled by defense counsel's violation of the pretrial order, the judge proceeded to order a mistrial without accurately assessing the admissibility of the reference to the 15 warrants. This assessment is critical in determining whether manifest necessity exists because, if the warrants were admissible, there is insufficient jury taint to create the requisite manifest necessity.

¶ 41.   Further, although the trial judge expressed his belief that no cautionary instruction could cure the improper comment, this belief seems to be unfounded because the evidence was likely admissible. Other than the statement of this belief, the record does not reflect that the trial judge explored alternatives to granting a mistrial, such as imposing sanctions on defense counsel. As we stated in *Barthels,* a judge "should consider alternatives to a mistrial before depriving the defen-

dant of the right to have the original tribunal render a final verdict." *Barthels,* at 185.

¶ 42.   We also note the short time frame between the making of the statement regarding the 15 warrants and the order of the mistrial. After a brief hearing that took place immediately after the statement was made, the trial judge ordered the mistrial. This approach was significantly different from that taken in *Washington,* in which the trial judge delayed his ruling until the next day when both parties were permitted a full opportunity to explain their position on the propriety of a mistrial. *Washington,* 434 U.S. at 500–501, 515.

¶ 43.   In sum, we conclude that, because the State did not meet its burden of showing a manifest necessity for the termination of Seefeldt's first trial, the circuit court erred in granting the State's motion for mistrial. We agree with the court of appeals that Seefeldt's second trial violated his constitutional protection against double jeopardy. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.