**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 22, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP267-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF914

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MITCHELL D. GREEN,

    DEFENDANT-APPELLANT.

---

        APPEAL from an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Reversed and cause remanded with directions*.

        Before Brash, C.J., Donald, P.J., and White, J.

¶1     DONALD, P.J.   Mitchell D. Green appeals a nonfinal order denying reconsideration of a motion to dismiss on double jeopardy grounds.[1]   Green contends that the circuit court erred in finding a manifest necessity to grant a mistrial, and if Green were to be retried, it would be a violation of his constitutional right against double jeopardy.   We agree, and therefore reverse.

## BACKGROUND

¶2     Green went to trial on three counts:   trafficking of a child, physical abuse of a child, and disorderly conduct with the use of a dangerous weapon.   At trial, the State called two witnesses:   S.A.B. and Milwaukee Police Officer Gerardo Orozco.

¶3     Relevant to this appeal, S.A.B. testified that, between October 30, 2018 and December 4, 2018, when she was seventeen years old, she was sex trafficked by a man named Kimeo Conley.   During that time period, on one occasion, Green drove her to a prostitution meeting with a client at a hotel.   S.A.B. said that although she did not remember the specific date, it stood out to her because the client spit in her mouth during the meeting.   Officer Orozco testified about his work with the Human Trafficking Task Force and his investigation regarding Green.   Following Officer Orozco's testimony, the State rested.

¶4     Green's first witness was his cousin, Jonathan Cousin, who was identified on the defense's witness list and named as a witness at the start of the trial.  Cousin testified that he was the one who gave S.A.B. the ride on the evening

---

[1] This court granted leave to appeal.  *See* WIS. STAT. RULE 809.50(3) (2019-20).   All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

she described. Cousin explained that he gave a man named Delmar, S.A.B., and J.R.[2] a ride downtown in exchange for gas money. According to Cousin, when they arrived downtown, Delmar asked Cousin to wait in exchange for more money, and Cousin agreed. About 15 minutes later, S.A.B. and J.R. returned to the car and S.A.B. mentioned a man spitting in her mouth to J.R. Cousin testified that he was not told what the purpose of the ride downtown was and was just driving for gas money. The State then cross-examined Cousin. After the completion of the State's cross-examination, the circuit court took a break for lunch.

¶5 After the break, the circuit court stated that there had been an off-the-record discussion for about five minutes in which the State expressed concern about Cousin's testimony, and that the court shared some of that concern. The State explained that it was not notified that Green intended to use Cousin as a *Denny* witness, there was no *Denny* investigation, no *Denny* motion hearing, and no ruling on the admissibility of the evidence. *See State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984). The State also commented that Cousin had essentially admitted to his involvement in trafficking S.A.B. without having been advised by counsel. In response, Green argued that Cousin was not admitting that he committed a crime.

¶6 The circuit court stated that it saw two main issues with Cousin's testimony: (1) whether Cousin "did or did not need … counsel before he testified" and (2) "the *Denny* issue, which wraps together with the whole … both sides have

---

[2] According to S.A.B., J.R. was also involved in trafficking her.

a right to a fair trial issue, and I think the State's basically saying they're literally caught by surprise with this testimony[.]"

¶7    After additional discussion between the parties and the circuit court on the record, the State indicated that it would leave it to the court's discretion as to how to proceed. Green argued that there was not "anything to fix," Cousin's testimony was relevant, and the jury should be allowed to weigh the testimony. Green also asserted that he had timely named the witnesses and the State had the option to use its resources to interview the witnesses about their statements.

¶8    The circuit court stated that it was "impossible" to tell the jury to ignore twenty-five minutes of "pretty compelling testimony where … Cousin literally tries to take the fall[.]" The court stated that it was "unfair to the State" and that "I'm not sure that I would have allowed ... Cousin to testify. I would have needed it to be vetted [a] bit more. I would have wanted to hear more of an argument and briefing from both sides as to the *Denny* issues." The court stated that there was no way that the "bell can be unrung, because of the gravity of the testimony, because of [the] *Denny* evidence, [and] because there were only three witnesses in this case[.]"

¶9    The circuit court, *sua sponte*, found that "the circumstances require[d] a mistrial." The court stated that the matter would be reset for a new trial date, and that the *Denny* issue should be resolved before the second trial. The court stated that had this come up earlier, it would have had Cousin speak to an attorney and Cousin probably would not have testified. The court stated that it was "clearly *Denny* evidence" and the State and the court had a right to know about it in advance.

4

¶10 After the mistrial, Green filed a motion to dismiss the case, arguing that a retrial would violate his constitutional right against double jeopardy. The State responded, arguing that the mistrial was necessary.[3] A hearing was held, and the court denied the motion to dismiss.

¶11 Subsequently, Green moved the circuit court to reconsider its decision. Green also moved to present *Denny* evidence at the upcoming trial. The State argued that the court should deny Green's motion to reconsider, and that Green had failed to meet his burden under the *Denny* test. A hearing was held, and the court ruled that Cousin's testimony was admissible under *Denny*. The court denied the motion for reconsideration.

¶12 Green filed a petition for leave to appeal, which we granted. Additional relevant facts will be discussed below.

## DISCUSSION

¶13 The Fifth Amendment to the United States Constitution and Article I, § 8 of the Wisconsin Constitution provide that a defendant may not be put in jeopardy twice for the same offense. *State v. Moeck*, 2005 WI 57, ¶33, 280 Wis. 2d 277, 695 N.W.2d 783.

¶14 "'Jeopardy' means exposure to the risk of determination of guilt." *State v. Seefeldt*, 2003 WI 47, ¶16, 261 Wis. 2d 383, 661 N.W.2d 882. It attaches when jury selection has been completed and the jury is sworn. *Id.* "Once

---

[3] In its response to the motion to dismiss, the State also argued that Green's attorney should be removed from the case. Green's first attorney eventually withdrew in light of the State's request and new counsel was appointed.

jeopardy attaches, prosecution of a defendant before a jury other than the original jury … is barred unless: (1) there is a 'manifest necessity' for a mistrial; or (2) the defendant either requests or consents to a mistrial." ***State v. Mattox***, 2006 WI App 110, ¶12, 293 Wis. 2d 840, 718 N.W.2d 281 (citation omitted).

¶15 At issue in this case is whether there was a "manifest necessity" for a mistrial. "A 'manifest necessity' warranting a mistrial is a high degree of necessity." ***Moeck***, 280 Wis. 2d 277, ¶37 (citation omitted). Whether a manifest necessity exists is a fact-intensive question. ***Id.*** A circuit court should declare a mistrial "only 'with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" ***Mattox***, 293 Wis. 2d 840, ¶13 (citation omitted).

¶16 On review, "an appellate court must, at a minimum, satisfy itself that the circuit court exercised sound discretion in ordering a mistrial." ***Seefeldt***, 261 Wis. 2d 383, ¶13. Sound discretion

> requires that the [circuit court] ensure that the record reflects there is an adequate basis for a finding of manifest necessity. As such, sound discretion is more than a review to ensure the absence of a mistake of law or fact. Rather, a review for sound discretion encompasses an assurance that an adequate basis for the finding of manifest necessity is on the record.

***Id.***, ¶37.

¶17 Green argues that the circuit court's decision to grant a mistrial was not supported by a manifest necessity. We agree with Green, and conclude that the circuit court did not exercise sound discretion.

¶18 First, at the time the circuit court granted the mistrial, the court did not determine whether Cousin's testimony was admissible. The court indicated that Cousin's testimony was "clearly ***Denny*** evidence" and expressed a desire for

additional vetting; however, the court did not rule on admissibility. At the conclusion of its decision, the court stated that whether Cousin's testimony was admissible should be determined before the second trial. In this case, whether Cousin's testimony was admissible was "critical." *See Seefeldt*, 261 Wis. 2d 383, ¶40. If the evidence was admissible, then there was not any "jury taint" creating a manifest necessity for a mistrial. *Id.* Accordingly, we conclude that in this case, the circuit court erred by failing to determine whether Cousin's testimony was admissible before declaring a mistrial.

¶19     Second, and relatedly, here, the circuit court did find that Cousin's testimony *was* admissible under *Denny* at a later hearing. Accordingly, contrary to the circuit court's suggestion, there was no need to "unring the bell" after Cousin testified. Given the circuit court's conclusion that Cousin's testimony was admissible, it did not taint the jury. *See Seefeldt*, 261 Wis. 2d 383, ¶40.

¶20     Third, in its decision granting a mistrial, the circuit court indicated that Cousin's testimony was unfair to the State, and that the State had a right to know about Cousin's testimony before trial. The State, however, had an opportunity to investigate Cousin before trial. Cousin's name and address were provided on the defense's witness list, which was filed five months in advance of the trial. The State also had the right to demand any "written or recorded statement" of Cousin. *See* WIS. STAT. § 971.23(2m)(am). The State did not do so.[4] Moreover, at the start of trial, the defense identified Cousin as a witness it intended to call. At that point, or before Cousin took the witness stand, the State

---

[4] No State discovery demand appears in the record. At the hearing on the motion for reconsideration, the State noted that a discovery demand is typically sent with the discovery. However, the State had no personal knowledge that one was provided in this case.

could have requested an offer of proof regarding the nature of Cousin's testimony. Again, the State did not do so.

¶21    The State points to its pretrial motion in limine.  The motion in limine provides:

> Prohibiting the defense from introducing any other-acts evidence involving a third-party perpetrator, unless and until defendant satisfies his burden and such evidence is ruled admissible by the court pursuant to *State v. Scheidell*, 227 Wis. 2d 285, 595 N.W.2d 661 (1999), *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W. 30 (1998) and [WIS. STAT.] § 904.04(2)[.]

¶22    We disagree with the State that the motion in limine prohibited Cousin's testimony.  *Scheidell* addresses other-acts evidence committed by an unknown third party.  *Id.*, 227 Wis. 2d at 287-88.  This case, however, does not involve an unknown party or other-acts evidence.  As Green observes, Cousin was a known party and both the State's evidence and Cousin's testimony are about the same act and differ only in the identity of the driver.  Further, even if we assume the motion in limine prohibits Cousin's testimony, the record does not reflect that there was ever a court ruling or order entered regarding the motion in limine.

¶23    Fourth, the question of whether Cousin should have had counsel before his testimony did not create a manifest necessity for a mistrial.  By the time this issue was raised, Cousin had already testified.  Cousin's testimony could not be erased by terminating Green's trial.  If Cousin's right to counsel was violated—

and we do not make any conclusions in that regard here—any potential remedy would go to Cousin.[5]

¶24 Lastly, we note that the State suggests that Green's position "would eviscerate any ability for courts to require defendants to present **Denny** evidence through pretrial proceedings." We disagree. The circuit court could have entered a pretrial scheduling order requiring the disclosure of **Denny** evidence in advance of the trial. Likewise, the State could have sought an order or ruling from the circuit court prohibiting the use of any **Denny** evidence without advance disclosure. Neither of these actions occurred here.

¶25 Therefore, based on our review of the record, we conclude that there was not a manifest necessity justifying a mistrial, and that a new trial would violate Green's constitutional right against double jeopardy. *See **Mattox***, 293 Wis. 2d 840, ¶19. Accordingly, we reverse, and on remand direct that the complaint be dismissed with prejudice.

> *By the Court.*—Order reversed and cause remanded with directions.
>
> Not recommended for publication in the official reports.

---

[5] The circuit court also suggested that Cousin might not have testified had he been given counsel. However, this is speculation. As stated above, at the time the right to counsel issue was raised, Cousin had already testified.