COURT OF APPEALS
DECISION
DATED AND FILED

March 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1668-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CF22

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

CESAR O. FERNANDEZ-REYES,

    DEFENDANT-PETITIONER.

---

APPEAL from an order of the circuit court for Langlade County: JOHN B. RHODE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 STARK, P.J. Cesar O. Fernandez-Reyes appeals from a nonfinal order denying his motion to bar his retrial on two counts of first-degree sexual assault of a child under the age of twelve, arguing that retrial violates the Double Jeopardy Clauses of the Wisconsin and United States Constitutions. After the jury

had been sworn in on the first day of Fernandez-Reyes' trial, the district attorney tested positive that evening for COVID-19 and subsequently moved for a mistrial based on manifest necessity. After considering possible alternatives to a mistrial, the circuit court granted the State's motion over Fernandez-Reyes' objection.

¶2    Fernandez-Reyes filed a motion to bar his retrial, arguing that the Double Jeopardy Clauses prohibited the State from retrying him. The circuit court denied Fernandez-Reyes' motion, and he petitioned this court for leave to appeal that nonfinal order.[1] Our review of the record reveals that the court exercised sound discretion by ordering a mistrial based on manifest necessity, and we therefore reject Fernandez-Reyes' arguments and affirm.

## BACKGROUND

¶3    Fernandez-Reyes' trial occurred in December 2023. On the first day, voir dire was completed, the jury was selected and sworn, and the circuit court provided preliminary instructions to the jurors. The parties then presented their opening statements. It is undisputed that the district attorney was clearly sick with upper respiratory symptoms during this time.

¶4    Later that evening—after taking a home COVID-19 test that was negative—the district attorney went to urgent care because she was feeling increasingly worse. At first, doctors diagnosed her with pneumonia, and she was sent home. However, she was contacted later that night by "the hospital" and informed that she had tested positive for COVID-19, and she was told to

---

[1] We grant Fernandez-Reyes' petition for leave to appeal in accordance with *State v. Jenich*, 94 Wis. 2d 74, 288 N.W.2d 114 (1980).

2

quarantine for five days. She immediately notified the circuit court and Fernandez-Reyes' defense counsel.

¶5 The next morning, the circuit court addressed the COVID-19 diagnosis with the parties. The district attorney, appearing by telephone, explained the situation on the record and moved for a mistrial, arguing that manifest necessity had been met in this case. Fernandez-Reyes opposed the State's motion on the bases that "jeopardy ha[d] attached," he had "revealed the enormous deficiencies in the State's case [during] opening statements," and a mistrial would "shift[] a tremendous tactical advantage to the State." Fernandez-Reyes made a discovery demand on the record for all of the district attorney's medical records from the previous week, and he also requested that the court hold an evidentiary hearing. While the court did not agree that all of the district attorney's personal medical records were necessary, it did request that she put evidence of her diagnosis on the record. In response, the district attorney emailed her positive test result to the court and defense counsel during the hearing, and she filed the test result on the record the next day.

¶6 Thereafter, the circuit court explored possible alternatives to a mistrial, including continuing the trial with the State's assistant district attorney (ADA), conducting the proceedings with the district attorney appearing by Zoom,[2] or adjourning the trial for a few days and continuing it during the next week. The parties were each granted time to discuss these alternatives. The court also informed the parties that it had solicited, by email, the opinion of four fellow

---

[2] Zoom is an internet-based live audiovisual conferencing platform. *See generally* WIS. STAT. § 967.08 (2023-24).

judges on the issue of whether to grant a mistrial in this general context. Following a short recess, the court returned and discussed two of the judges' responses, both of them opining that they would grant a mistrial. After allowing the parties one more opportunity to argue, the court declared a mistrial and excused the jury.

¶7    The following day, the parties convened again to address Fernandez-Reyes' request for bail modification and a letter he filed objecting to the State "supplementing the record" with the district attorney's COVID-19 test result without an evidentiary hearing. The district attorney appeared by Zoom audio only. The circuit court explained why it did not order an evidentiary hearing and ordered Fernandez-Reyes' bond reduced so that he could be released from custody.

¶8    Seven months later, Fernandez-Reyes moved to bar his retrial on double jeopardy grounds, which the State opposed. The circuit court held a nonevidentiary hearing on Fernandez-Reyes' motion. After considering the parties' arguments, the court denied the motion to bar his retrial on the record, and it later memorialized its decision in a written order. Fernandez-Reyes appeals.

## DISCUSSION

¶9    "The Fifth Amendment to the U.S. Constitution and [a]rticle I, [s]ection 8 of the Wisconsin Constitution protect a criminal defendant from being placed in jeopardy twice for the same offense." *State v. Seefeldt*, 2003 WI 47, ¶15, 261 Wis. 2d 383, 661 N.W.2d 822. "'Jeopardy' means exposure to the risk of determination of guilt," and "[i]t attaches in a jury trial when the selection of the jury has been completed and the jury is sworn." *Id.*, ¶16. "[T]he constitutional protection … embraces the defendant's 'valued right to have his [or her] trial

completed by a particular tribunal'" based on the belief that "a second prosecution may be grossly unfair." *Arizona v. Washington*, 434 U.S. 497, 503 (1978) (citation omitted). "Consequently, as a general rule, the district attorney is entitled to one, and only one, opportunity to require an accused to stand trial." *Id.* at 505.

¶10 Nevertheless, "[a] defendant's right to have his or her trial concluded by a particular tribunal can be, under certain circumstances, subordinated to the public interest in affording the State one full and fair opportunity to present its evidence to an impartial jury." *Seefeldt*, 261 Wis. 2d 383, ¶19. "A retrial is permissible 'whenever, in [the circuit court's] opinion, taking all the circumstances into consideration, there is a manifest necessity' supporting a mistrial." *State v. Green*, 2023 WI 57, ¶23, 408 Wis. 2d 248, 992 N.W.2d 56 (alteration in original) (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)). "'Manifest necessity' refers not to absolute necessity but to a 'high degree' of necessity." *Id.* (quoting *Washington*, 434 U.S. at 506). "[G]iven the importance of the constitutional protection against double jeopardy, the State bears the burden of demonstrating a 'manifest necessity' for any mistrial ordered over the objection of the defendant." *Seefeldt*, 261 Wis. 2d 383, ¶19. "If a trial is terminated without manifest necessity and over the defendant's objection, the State is not permitted to commence a second trial against the defendant." *Id.*

¶11 In this appeal, Fernandez-Reyes asks us to determine whether the circuit court erred by denying his motion to bar his retrial on double jeopardy grounds. He asserts that the court's decision to grant a mistrial due to the district attorney's COVID-19 diagnosis was not supported by manifest necessity. Conversely, the State contends that the court exercised sound discretion when it found manifest necessity and granted a mistrial. Therefore, the State argues that the court properly denied Fernandez-Reyes' motion to bar his retrial. For the

reasons that follow, we conclude, based on our review of the record, that the circuit court exercised sound discretion by ordering a mistrial based on manifest necessity.

## I. Level of deference

¶12    Fernandez-Reyes first asks us to determine the level of deference we are to show the circuit court's decision in this case.  "A circuit court's exercise of discretion in ordering a mistrial is accorded a level of deference that varies depending on the particular facts of the case."  *Green*, 408 Wis. 2d 248, ¶20 (citation omitted).  On one end of that spectrum, "appellate courts give 'great deference' to circuit courts' judgments when 'the jury is hopelessly deadlocked.'"  *Id.*, ¶21 (citation omitted).  "On the other end of the spectrum, appellate courts apply 'the strictest scrutiny' to a [circuit] court's mistrial order when 'critical prosecution evidence' is unavailable or when 'there is reason to believe that the district attorney is using the State's superior resources to harass the defendant or to achieve a tactical advantage.'"  *Id.* (citation omitted).

¶13    Fernandez-Reyes argues that we "must apply the strictest possible scrutiny to the [c]ircuit [c]ourt's decision to grant a mistrial" because "the evidence suggests that the State sought the mistrial to achieve [a] tactical advantage."  According to Fernandez-Reyes, "[t]he district attorney was clearly ill at the start of the trial, yet she made the decision to go forward with jury selection and opening statements," and it was only "[a]fter hearing an outline of the defendant's evidence and strategy" that the district attorney took a COVID-19 test.  He contends that "[t]he fact that [the district attorney] took the first test [at home], standing alone, does not prove that she had an improper motive.  But when that

test was negative, the fact that she took a second test [at urgent care] suggests that she was fishing for a way to get a mistrial."

¶14　The State responds that the "[s]trict[est] scrutiny is not warranted here because the [district attorney] did nothing wrong," calling "Fernandez-Reyes'[] accusation that she did [something wrong] and lied about it … both baseless and reckless." According to the State, "[f]or the first time on appeal," Fernandez-Reyes accuses the district attorney of misconduct, which "is the opposite of the position Fernandez-Reyes took in the [circuit] court when the issue arose." The State disputes Fernandez-Reyes' argument that the district attorney had an ulterior motive for her actions in this case. As the State argued before the circuit court, the strictest scrutiny is "not for cases where a [district attorney] becomes unavailable due to illness."

¶15　We agree with the State that Fernandez-Reyes did not allege in the circuit court that the district attorney had committed misconduct, and we also agree that the tone of his arguments on appeal certainly suggests wrongdoing by the State based on the sequence of events. Nevertheless, Fernandez-Reyes did advocate for the application of "pretty strict scrutiny" in the circuit court because "the [district attorney] had choices in this case, and she chose a course that turned out to be very much to her tactical advantage." In response to this argument, the court determined that it was "appropriate for [it] to apply strict scrutiny … even though [it was] not making any finding that there was any misconduct by the State or attempt by the State to use superior resources to achieve a tactical advantage." Instead, it applied the strictest scrutiny "in light of the extreme stakes and seriousness of this case" because Fernandez-Reyes "faces the possibility of spending the rest of his life in prison if he's convicted of some or all of these offenses."

¶16     We question whether the strictest scrutiny is warranted in this case. The district attorney explained, on the record, the reason for the timing of her COVID-19 test:

> I think as everybody in the courtroom is aware, I was not feeling well yesterday. It got bad enough that last night at about 7:30 p.m. I went into urgent care to see if there was anything they could do or what was going on. They originally told me that I had pneumonia and sent me home, and about 9 p.m. I got a phone call from the hospital saying that I had tested positive for [COVID]-19 and that I would need to stay home and isolate for the next five days.
>
> ….
>
> I certainly don't want to [request a mistrial]. I had a 13-year-old victim that was ready to come in at 7:30 this morning. It—this is a tremendous disadvantage to the State as well. I went to the doctor last night because yesterday was such a long day, and I felt so terrible when I got home. I was in a tremendous amount of pain. That's why I waited. They suggested a C[OVID] test, I did not request a C[OVID] test. In fact, I did an at-home C[OVID] test before I even went to the doctor, and that was negative. I thought that I had bronchitis or something along those lines, where they could give me something to help manage the symptoms through the jury trial. I apologize to the [c]ourt, I apologize to the defense, and most of all I apologize to the victim. I certainly did not want this to happen.

¶17     The circuit court did not find that the State committed misconduct or attempted to use superior resources to achieve a tactical advantage. On appeal, it is unclear if Fernandez-Reyes is specifically challenging the court's findings or if he is simply advocating for us to apply the strictest scrutiny. He essentially claims that the district attorney's timing of her COVID-19 tests was "suspicious." Beyond this suggestion, we see no evidence in the record that would cause us to question the court's findings on this question.

¶18     In terms of the circuit court's decision to apply the strictest scrutiny in this case, as we discussed above, the deference we show to the court is on a

spectrum based on the *reason for the mistrial*—i.e., a deadlocked jury, on the one hand, to error or misconduct by the State, on the other. *See Green*, 408 Wis. 2d 248, ¶21. Neither the court nor Fernandez-Reyes on appeal present any legal authority for deference being based on the seriousness of the crime or the possible penalty, as the court reasoned. However, we need not decide this issue because even if we were to apply the strictest scrutiny, for the reasons discussed below, we would still conclude that the court exercised sound discretion by finding manifest necessity for a mistrial. *See id.*

## II. *The circuit court exercised sound discretion*

¶19 "Regardless of the level of deference to be applied, an appellate court must, at a minimum, satisfy itself that the circuit court exercised sound discretion in ordering a mistrial." *Seefeldt*, 261 Wis. 2d 383, ¶13. "Sound discretion means acting in a rational and responsible manner." *Id.*, ¶36. "A [circuit] court exercises sound discretion in deciding [that] manifest necessity justifies a mistrial provided the court:" (1) "gives 'both parties a full opportunity to explain their positions and consider[s] alternatives such as a curative instruction or sanctioning counsel'"; (2) "accord[s] careful consideration to [defendant]'s interest in having the trial concluded in a single proceeding"; and (3) "ensure[s] that the record reflects that there is an adequate basis for a finding of manifest necessity." *Green*, 408 Wis. 2d 248, ¶24 (alterations in original; citations omitted). "A court does not exercise sound discretion if 'the … court fails to consider the facts of record under relevant law, bases its conclusion on an error of law or does not reason its way to a rational conclusion.'" *Id.* (citation omitted).

¶20 First, the record demonstrates that the circuit court "gave 'both parties a full opportunity to explain their positions and consider[ed] alternatives.'"

*See id.*, ¶28 (citation omitted). After the State requested a mistrial, the district attorney detailed the circumstances and noted why certain alternatives to a mistrial were untenable. In particular, she argued that her ADA could not take over the trial in this case because "he is a brand new law school grad[uate who] had never practiced in criminal law before," "has never even seen a jury trial, and has not done any work on this case." Further, the district attorney asserted that she had "generated a rapport with" the thirteen-year-old alleged victim, and she did "not think it would be fair to [the alleged victim], or [the ADA], or frankly anybody involved in the case to try to force [the ADA] to step in at this point."

¶21 In response, Fernandez-Reyes complained that the State had obtained a tactical advantage and that a mistrial would be "grossly unfair." He argued that he had "revealed the enormous deficiencies in the State's case in [his] opening statements" regarding Fernandez-Reyes' access to the alleged child victim during the charging period and that a postponement would "shift[] a tremendous tactical advantage to the State." He was careful not to "accuse anyone of anything," but he explained, "I want to know why didn't the State go get tested earlier. Why did it wait until we gave our opening to then go take a test?"

¶22 Fernandez-Reyes further insisted there were viable alternatives to a mistrial, such as masking, appearing by Zoom, or having the district attorney appear by Zoom with the ADA assisting in the courtroom. The district attorney addressed her concerns with Fernandez-Reyes' Zoom suggestion, noting, "I do not think it is practicable for me to appear via Zoom looking at the issues that we had

for this short hearing this morning."[3]  She further noted that "while I'm on the phone right now, I have a hard time hearing the courtroom.  I have my volume all the way up and I have to have a silent room to be able to hear what's going on."

¶23    In response to Fernandez-Reyes' suggestion that the ADA could assist in the courtroom, the district attorney argued that the "technology difficulties" during the hearing made "it clear that if I am appearing from home via phone or via Zoom, it's really no different than if the ADA [were] doing it by himself at this point.  There's also no practical way for me to communicate with him."

¶24    The circuit court also considered adjourning the trial to the following week rather than declaring a mistrial.  The district attorney argued several reasons why an adjournment was not practical.  She noted, first, "that I was within a few feet of all of those jurors for a large amount of the day yesterday" and that "[t]here is the chance that I got some of them sick as well, and then we would be in the same position."  The district attorney also observed that she discovered, after reviewing child protective services records in the case, that one of the jurors was the guardian ad litem for the alleged child victim.  The court and the parties agreed that the juror would need to be removed from the jury, leaving no alternate juror, which was problematic, especially in the event that any of the jurors became ill.

---

[3] The district attorney had first attempted to appear at the hearing via Zoom, but due to technical difficulties, she could not be heard by those in the courtroom.  Thereafter, the circuit court was forced to call the district attorney by telephone, and the call was put on the courtroom's speaker system.  At least once during the hearing, it appears that the court lost contact with the district attorney and had to call her back.

¶25     Both the parties and the circuit court also noted the difficulties with securing the expert witnesses and the two Spanish language interpreters needed for this case if the trial were delayed. Fernandez-Reyes explained that it was a challenge to schedule his expert, implying that his expert likely would not be available if the trial were adjourned until the next week. While the State had contacted its expert witness and confirmed the witness was available, the court explained that it was unlikely the interpreters would be available on such short notice. Finally, the district attorney pointed out that the current panel of jurors might become biased against the State because of the COVID-19 exposure, given that COVID-19 is "a hot-button issue."

¶26     Fernandez-Reyes continued to contend that the circuit court had "options." He again advocated for masking, "social distancing in the courtroom"; using Zoom, stating that the court could "count on the Zoom technology"; and the district attorney appearing by Zoom from her office "[s]o [she] would be in very close proximity to [the State's] witnesses, to [the ADA], to the case agent, and things like that." Further, Fernandez-Reyes argued that he was willing to "try" to complete the trial in the remaining time originally scheduled, which was one day. He reiterated that "[t]he State brought this on itself" by waiting until after opening arguments to get tested for COVID-19.

¶27     Based on the foregoing, we conclude that the record supports a determination that the circuit court gave "both parties a full opportunity to explain their positions and consider[ed] alternatives." *See id.* (citation omitted).

¶28     Second, we conclude that the record demonstrates that the circuit court accorded "careful consideration to [Fernandez-Reyes'] interest in having the trial concluded in a single proceeding." *See id.*, ¶30 (citation omitted). Initially,

12

we note that Fernandez-Reyes faults the court because "[t]his topic just never entered into the [c]ourt's reasoning," and he asserts that "the failure to consider this essential element of the double jeopardy protection amounts to a failure to exercise sound discretion."

¶29 We are not convinced, however, that this "single proceeding" factor is meant to be taken as literally as Fernandez-Reyes suggests. First of all, the courts in this state have often eschewed "magic words" requirements. *See State v. Brown*, 2020 WI 63, ¶27, 392 Wis. 2d 454, 945 N.W.2d 584 ("The law generally rejects imposing 'magic words' requirements."). Thus, the circuit court's failure to specifically mention Fernandez-Reyes' interest in having the trial concluded in a single proceeding is not determinative.

¶30 Moreover, our review of the case law suggests that this factor is merely meant to ensure that the circuit court considers the implications of a mistrial, including interests in a fair trial and double jeopardy consequences. *See Washington*, 434 U.S. at 515-16 (concluding that "the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding" because the court "evince[d] a concern for the possible double jeopardy consequences of an erroneous ruling" and "gave both defense counsel and the district attorney full opportunity to explain their positions on the propriety of a mistrial"); *Green*, 408 Wis. 2d 248, ¶¶19, 30 (noting that the "'manifest necessity' standard" was formulated to ensure that "retrials do not violate the defendant's right against double jeopardy, which is dependent upon the [circuit] court exercising 'sound discretion' in declaring a mistrial" and observing that the court satisfied the "single proceeding" factor by "acknowledg[ing] each party's right to a fair trial").

¶31     In this case, we conclude that the record establishes that the circuit court "accorded careful consideration" to this factor.  *See Washington*, 434 U.S. at 516.  The court explained its decision on the record as follows:

> Considering all of the options here, and the complications, and I am sensitive to the fact that this may actually harm the State and benefit Mr. Fernandez[-Reyes] in the form [that] could be a mistake, and jeopardy has attached, and the whole case is done now, or that it … could require me to feel compelled to accommodate Mr. Fernandez[-Reyes] with granting him a significantly reduced or signature bond while we wait.  But my heart, and my guts, and my head tell me that this requires an adjournment.  And because we've already sworn in a jury, an adjournment means declaring a mistrial.

Thus, the court specifically observed that jeopardy had attached; it recognized the consequences of its decision for both Fernandez-Reyes and the State; and, after addressing the alternative options, it determined that a mistrial was the most appropriate course of action.  The court's discussion supports our conclusion that it properly exercised its discretion by according "careful consideration to [Fernandez-Reyes'] interest in having the trial concluded in a single proceeding."  *See Green*, 408 Wis. 2d 248, ¶24 (citation omitted).

¶32     Third, and finally, we conclude that "the record reflects that there is an adequate basis for [the circuit court's] finding of manifest necessity."  *See id.* (citation omitted).  No one questions that the district attorney was ill with COVID-19—her positive test result is in the record—and the health of the district attorney is certainly a reasonable consideration when finding manifest necessity.  *See United States v. Jorn*, 400 U.S. 470, 479-80 (1971) (noting that "a criminal trial is … a complicated affair to manage," given that "[t]he proceedings are dependent" on, for example, "the health of the various witnesses, parties, attorneys, jurors, etc., all of whom must be prepared to arrive at the courthouse at

set times"); *see also* **Green**, 408 Wis. 2d 248, ¶41 ("As the COVID-19 pandemic made clear, a mistrial may be manifestly necessary in 'varying and often unique situations arising during the course of a criminal trial.'" (citation omitted)). Moreover, the court stated on the record: "I am convinced by what I hear in [the district attorney's] voice, and I know her, that she is suffering. She is sick." Thus, the court believed that the district attorney was truly ill and that she had not somehow manufactured an excuse to force a mistrial.

¶33 The circuit court further considered all of the less drastic alternatives to a mistrial presented by the parties, and it both implicitly and explicitly determined that none of the proposed alternatives were feasible under the circumstances. *See* **State v. Echols**, 175 Wis. 2d 653, 673, 499 N.W.2d 631 (1993) ("When a [circuit] court does not expressly make a finding necessary to support its legal conclusion, an appellate court can assume that the [circuit] court made the finding in the way that supports its decision."). The factors that the court considered are as follows: the district attorney was ill with COVID-19 and she did not discover her diagnosis until the evening after the first day of the trial; the court believed the district attorney's explanation of how, why, and when she discovered she had COVID-19; the inexperienced ADA was unable to take over the case; the district attorney had a good relationship with the alleged child victim; Zoom was not a reasonable option due to technical difficulties; the jurors had been possibly exposed to COVID-19; one juror needed to be excused for cause, leaving no alternate in the event that a juror or jurors became sick, possibly from exposure to the district attorney; the advice from judicial colleagues was that the law supported a mistrial; and the two Spanish language interpreters likely would have been unable to rearrange their schedules to appear the following week. These

circumstances provide more than an adequate basis for the court's exercise of sound discretion.

¶34 We are not persuaded by Fernandez-Reyes' additional arguments challenging the circuit court's decision. Initially, as the State recognizes, "Fernandez-Reyes seems to believe that the existence of possible alternatives [to a mistrial] renders the [circuit] court's decision an erroneous exercise of discretion."[4] Further, Fernandez-Reyes argues that his opening statement revealed to the State that he did not have access to the alleged child victim during either some or all of the charging period, which "basically make[s] the State's claim of sexual assault during the charged time frame impossible."[5]

¶35 Our review of the record demonstrates that Fernandez-Reyes strenuously argued before the circuit court that his opening statement had revealed the deficiencies in the State's case. While certainly an appropriate factor for the court to consider, we cannot conclude that this factor *required* a finding that a mistrial was *not* a manifest necessity and that the court failed to exercise sound discretion because it granted one. *See United States v. Dennison*, 73 F.4th 70,

---

[4] We pause here to note that at various times in their briefs, both the State and Fernandez-Reyes refer to our standard of review as an erroneous exercise of discretion, and Fernandez-Reyes also refers to the standard as a misuse of discretion. Our supreme court's majority opinion in *Green* utilized the phrase "sound discretion" to describe the standard by which we are to review a circuit court's decision to declare a mistrial. *State v. Green*, 2023 WI 57, ¶¶19, 22, 24, 27, 42, 408 Wis. 2d 248, 992 N.W.2d 56. Accordingly, we do so as well.

[5] In addressing Fernandez-Reyes' arguments before the circuit court, the State argued:

> [Fernandez-Reyes] know[s] my strategy as well, and I also wouldn't say that there's anything very surprising here. The defense strategy is pretty much the same as every child sex[ual] assault: The victim is lying, the investigation was poor. That's not groundbreaking news and is contained in the discovery that the State provided.

81-82 (1st Cir. 2023) ("When the defendant's attorney was asked to address the matter [of a mistrial], he offered no substantive objection other than to complain that his defense strategy had been exposed…. [T]his is not the stuff from which a defendant may weave a colorable claim of abuse of discretion."). Accordingly, we agree with the State that many of Fernandez-Reyes' arguments merely express disagreement with the court's exercise of discretion, and they do not convince us that the court failed to reach a rational conclusion or failed to exercise sound discretion.

¶36    Additionally, Fernandez-Reyes argues that "[b]y refusing to permit discovery and evidence, the [circuit c]ourt did not give [him] a 'full opportunity to explain his position.'" Fernandez-Reyes explains that he requested discovery of the district attorney's medical records, requested an evidentiary hearing where he could call witnesses, and also "requested more limited discovery, i.e., the details of the district attorney's [COVID-19] symptoms, when the onset of symptoms occurred, and proof of the alleged positive COVID-19 test result." But, Fernandez-Reyes asserts, "the [c]ourt denied everything." According to Fernandez-Reyes, "[r]efusing discovery and evidence, and merely accepting the [district attorney's] claims at face value, deprives Fernandez-Reyes a 'full opportunity to explain his position.'"

¶37 We disagree that the circuit court erred by refusing Fernandez-Reyes' request for a hearing and additional evidence. As noted above, it was clear to all those in the courtroom, based on the symptoms she was exhibiting, that the district attorney was sick. The court noted, at least twice, its belief that the district attorney was telling the truth, explaining that it was "convinced by what I hear in [the district attorney's] voice, and I know her, that

17

she is suffering. She is sick." The court also noted that it "believe[d]" that "her illness" was "legitimate."

¶38 Fernandez-Reyes has presented no legal authority either requiring that the circuit court hold an evidentiary hearing before declaring a mistrial under these circumstances or stating that the court is not able to accept the district attorney at her word without placing her under oath. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider arguments that are unsupported by references to legal authority). We conclude that the court had discretion to accept the district attorney's statements regarding her COVID-19 diagnosis and her explanation of how, why, and when she obtained that diagnosis. *See United States v. Gilmore*, 454 F.3d 725, 730 (7th Cir. 2006) ("Here, the district judge was satisfied not only with the [district attorney's] explanation, but also satisfied by what she witnessed in overseeing the trial. Since she was satisfied with the explanation, there was no need to hold an evidentiary hearing to probe the prosecutor's intent."). Thus, there was no need for discovery or a formal evidentiary hearing to investigate the district attorney's actions or motives, and the court's failure to hold an evidentiary hearing did not amount to a failure to exercise sound discretion.[6]

---

[6] Fernandez-Reyes also faults the circuit court for "disregard[ing] its own order and grant[ing] the motion for a mistrial without proof of a positive" COVID-19 test. According to the record, the district attorney agreed to provide her positive COVID-19 test result, and she did so in an email that she sent to the court and Fernandez-Reyes' defense counsel during a break in the proceedings *prior to* the court's decision on the State's motion for a mistrial. The district attorney later filed a document showing her positive test result. There is no evidence, however, that the court ever saw the district attorney's email before it granted the State's motion on the record; thus, Fernandez-Reyes contends that the court "erroneously exercised its discretion" "because [it's decision] amounts to a failure by the court to 'ensure[] that the record reflects that there is an adequate basis for a finding of manifest necessity.'" *See Green*, 408 Wis. 2d 248, ¶24 (citation omitted).

(continued)

¶39 Finally, Fernandez-Reyes contends that the circuit court's "heavy reliance on advice from friends on how to exercise discretion amounts to a misuse of discretion." As noted above, the court informed the parties that it had contacted "four of my fellow judges who[m] I trust very much" for advice on the situation. The court later told the parties that it had received two responses. One of the judges said, "Absolutely. It has to be a mistrial." The other judge responded, "Unless the [district attorney] has an [ADA who] can pick things up from there, it's a mistrial." The court clarified that its judicial colleagues did not know "anywhere close to the whole scenario; I just gave them a few sentences."

¶40 According to Fernandez-Reyes, the circuit court erred by seeking "advice from friends about what they think that he should do." He asserts that "what stands out most about this advice is that it was not advice on the law; it was advice that went directly to how the [c]ourt should exercise its discretion." Essentially, Fernandez-Reyes argues that "these friends were permitted to weigh in with their strong opinions in favor of a mistrial based on a stunted view of the actual situation."

¶41 We conclude that the circuit court did not err by consulting judicial colleagues before reaching its decision to grant a mistrial in this case. Again,

---

We disagree. First, after denying Fernandez-Reyes' request for an evidentiary hearing, the circuit court observed that "at the very least we should probably have something in the record confirming your … diagnosis." The court believed the district attorney. Thus, the court did not require, nor did it suggest that it required, the positive COVID-19 test in the record before it could rule on the motion. Second, as the court explained at the hearing on Fernandez-Reyes' motion to bar his retrial, "Even if the [c]ourt did not review the written verification of the positive test attached to the email before the ruling, I do believe it is within the [c]ourt's discretion to trust and believe the district attorney based only on her word." As we stated above, Fernandez-Reyes has presented no contrary legal authority. Therefore, under these facts, whether the court did or did not review the district attorney's positive COVID-19 test result does not constitute a failure to exercise sound discretion.

Fernandez-Reyes fails to present any legal authority stating that consulting other judges is inappropriate. *See Pettit*, 171 Wis. 2d at 646. The State, in contrast, cites SCR 60.04(1)(g)2. and 3. for the proposition that "[j]udges are allowed to consult with each other (and other legal experts) for advice in a pending case."[7] Further, we disagree with Fernandez-Reyes that this advice was not "advice on the law" or a "strong push in favor of a mistrial." The judges did not tell the court how to exercise its discretion. The judges stated what they would consider and do under the circumstances based on the law. The judge in this case then made up his own mind as to how to proceed.

¶42 Therefore, based on the foregoing and on our review of the record, we conclude that the circuit court acted in a rational and responsible manner under the circumstances, and we agree that the court exercised sound discretion by ordering a mistrial based on manifest necessity. Consequently, retrial will not violate Fernandez-Reyes' constitutional rights under the Double Jeopardy Clauses.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

---

[7] Under SCR 60.04(1)(g)2., "[a] judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond." Under SCR 60.04(1)(g)3., "[a] judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities."