STATE of Wisconsin, Plaintiff-Respondent,

v.

Russell C. TROKA, Defendant-Appellant.

Court of Appeals

*No. 2014AP2470–CR. Submitted on briefs August 14, 2015.—Decided April 21, 2016.*

2016 WI App 35

(Also reported in 880 N.W.2d 161.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Cole Daniel Ruby* of *Martinez & Ruby, LLP*, Baraboo.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Kloppenburg, P.J., Sherman and Blanchard, JJ.

¶ 1. KLOPPENBURG, P.J. Russell Troka appeals a non-final order denying his motion to dismiss four criminal counts arising from an alleged attack against A.Z. on double jeopardy grounds.[1] Troka contends that the record does not reflect an adequate basis

---

[1] This court granted leave to appeal the non-final order. *See* WIS. STAT. RULE 809.50(3) (2013–14). Troka pled no contest to a fifth count, misdemeanor bail jumping, and that count and plea are not at issue in this appeal.

for a finding of manifest necessity warranting a mistrial over Troka's objection, and, therefore, to retry Troka would violate his rights under the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution against double jeopardy. We agree and reverse the circuit court's order.

## BACKGROUND

¶ 2. According to the criminal complaint, Troka repeatedly hit A.Z. with a closed fist and put his hands around her neck, resulting in injuries to A.Z.'s face, forearms, and neck. The State charged Troka with five counts arising from this incident: attempted first-degree intentional homicide, strangulation or suffocation, substantial battery, disorderly conduct, and misdemeanor bail jumping.

¶ 3. The first day of trial included jury selection, opening arguments, and testimony by A.Z. The second day of trial included testimony by five law enforcement officers and two medical witnesses called by the State, and two medical witnesses called by Troka, plus the beginning of testimony from a third medical witness called by Troka.

¶ 4. The State's first medical witness, the emergency room doctor who examined A.Z. the day after the incident, diagnosed A.Z.'s injuries as strangulation and a nasal bone fracture, but he was not able to determine how much force was used, for how long A.Z. was strangled, or when her nose was broken. The second medical witness, the Sexual Assault Nurse Examiner who also examined A.Z. the day after the

All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

incident, testified that the injuries she observed were consistent with A.Z.'s report of being hit and strangled.

¶ 5. Troka's first medical witness was the radiologist who performed a CT scan of A.Z.'s neck. He testified that the CT scan revealed no traumatic injuries related to strangulation, that he observed no swelling around the throat or nasal area, and that he observed a nasal bone fracture but could not determine how old it was. Troka's second medical witness was the resident physician who performed an ear, nose, and throat examination of A.Z. He testified that he found no major soft tissue injury and no trauma to the airway or bruising of the vocal cords, that he observed external bruising to the neck but no other evidence of external injury, that his findings were consistent with A.Z.'s report of strangulation, and that he observed a nasal bone fracture but could not determine how old it was.

¶ 6. The third medical witness Troka called, Dr. Richard Tovar, had not examined A.Z. and was called as an expert on the nature and possible causes of A.Z.'s injuries solely from his review of the medical records. Tovar gave only preliminary testimony—about his education and experience as an emergency physician and medical toxicologist—before the prosecutor objected to continuation of Tovar's testimony. The basis for the objection was that the defense had not provided the State with a report or written summary of Tovar's testimony before trial, in violation of Wis. Stat. § 971.23(2m)(am), and therefore Tovar must be excluded as an expert witness.[2]

¶ 7. The circuit court found that defense counsel's failure to provide the State with a report or

---

[2] Wisconsin Stat. § 971.23(2m) requires:

written summary of Tovar's testimony before trial precluded the State from effectively rebutting that testimony, because the State had not been able to ask its own medical expert about Tovar's opinion testimony when that expert was on the stand and the State could not then call its expert in rebuttal because he had been released and was unavailable.

¶ 8. After two recesses to discuss the situation, defense counsel reported to the circuit court that, after conferring with Troka, the defense was prepared to withdraw Tovar as a witness because Tovar's testimony was not critical to the defense. Specifically, defense counsel explained:

> [W]e're prepared to withdraw Dr. Tovar as a witness. We've talked to our client and evaluated it, and what he testified to we don't think is critical to our case so it's a decision that we're making strategically . . . . [A]lso, we were contemplating a curative instruction to the jury that we just withdrew Dr. Tovar—he hasn't given anything other than his background—and we decided to go on.

¶ 9. After a third recess, the State moved for a mistrial, and Troka objected. On the question of whether the defense could proceed to examine Tovar further, the circuit court reiterated its view that, to proceed with Tovar's expert opinion testimony beyond

---

Upon demand, the defendant or his or her attorney shall, within a reasonable time before trial, disclose to the district attorney and permit the district attorney to inspect and copy . . .

. . . .

(am) Any relevant written or recorded statements of a witness named on a list . . . including any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony . . . .

the mere introductory testimony that Tovar had already given would substantially prejudice the State, because the State would neither be able to anticipate nor be able to rebut the testimony that Tovar was about to give. Turning to the mistrial issue, the court agreed with the State's argument that, to proceed without Tovar's testimony as Troka proposed, would, if the jury returned a guilty verdict on any of the counts, set up a "very likely" successful appeal based on ineffective assistance of counsel, because Troka would be able to argue that his attorney's mistake in failing to turn over an expert report left Troka compelled to proceed without a critical expert witness. The court granted the State's motion for a mistrial, thereby terminating the trial, and scheduled a second trial.

¶ 10. Before the second trial, Troka filed a motion to dismiss on double jeopardy grounds, arguing that the State had failed to demonstrate a manifest necessity warranting a mistrial over Troka's objection. The circuit court held a hearing and denied the motion to dismiss on the ground that the mistrial had been required, relying on the same rationale as at the time of the mistrial ruling.

## DISCUSSION

¶ 11. Troka contends that the record does not reflect an adequate basis for a finding of manifest necessity warranting a mistrial over Troka's objection, and, therefore, to retry Troka would violate his rights under the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution against double jeopardy.

¶ 12. In the sections that follow, we first review the constitutional protection against double jeopardy, the manifest necessity standard used to determine

whether a mistrial should be ordered to effectuate the constitutional protection against double jeopardy, and the level of deference that may be applied to a circuit court's mistrial decision. We then review the circuit court's mistrial decision here based on the record before it, and we conclude that, regardless of the level of deference to be applied in this case, the circuit court erred in granting the State's motion for a mistrial and terminating Troka's first trial because the State failed to demonstrate a manifest necessity warranting a mistrial. Accordingly, a second trial would violate Troka's protection against double jeopardy and, therefore, Troka's motion to dismiss should have been granted.

A. *Legal Principles Pertaining to the Propriety of a Second Trial Following a Mistrial over a Defendant's Objection: Double Jeopardy, Manifest Necessity for Mistrial, and Standard of Review of a Circuit Court's Decision Granting a Mistrial*

¶ 13. As noted above, the circuit court granted the State's motion for a mistrial over Troka's objection, and Troka moved to dismiss before the second trial arguing that a second trial would violate his constitutional protection against double jeopardy.

█

¶ 14. As the Wisconsin Supreme Court has explained, mistrials should not be lightly granted:

> The Fifth Amendment to the U.S. Constitution and Article I, Section 8 of the Wisconsin Constitution protect a criminal defendant from being placed in jeopardy twice for the same offense. The underlying purpose for this protection against double jeopardy is to prevent the State from using its resources and power to make repeated attempts to convict a person for the same offense.

> "Jeopardy" means exposure to the risk of determination of guilt. It attaches in a jury trial when the selection of the jury has been completed and the jury is sworn. Accordingly, the protection against double jeopardy includes a defendant's "valued right to have his trial completed by a particular tribunal."
>
> The protection against double jeopardy limits the ability of the State to request that a trial be terminated and restarted. This protection is important because the unrestricted ability of the State to terminate and restart a trial increases the financial and emotional burden on the defendant, extends the period during which the defendant is stigmatized by an unresolved accusation of wrongdoing and may increase the risk that an innocent defendant may be convicted.

*State v. Seefeldt*, 2003 WI 47, ¶¶ 15–17, 261 Wis. 2d 383, 661 N.W.2d 822 (quoted sources, citations, and footnote omitted).

¶ 15. "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury . . . is barred unless: (1) there is a 'manifest necessity' for a mistrial; or (2) the defendant either requests or consents to a mistrial." *State v. Mattox*, 2006 WI App 110, ¶ 12, 293 Wis. 2d 840, 718 N.W.2d 281 (quoted source omitted). Here, there is no dispute that the defense did not request or consent to a mistrial.

¶ 16. "[G]iven the importance of the constitutional protection against double jeopardy, the State bears the burden of demonstrating a 'manifest necessity' for any mistrial ordered over the objection of the defendant." *See Seefeldt*, 261 Wis. 2d 383, ¶ 19 (quoted source omitted). The doctrine of manifest necessity

means that a circuit court "could declare a mistrial when 'taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.' " *Mattox*, 293 Wis. 2d 840, ¶ 13 (quoted source omitted). "This tool should be used only 'with the greatest caution, under urgent circumstances, and for very plain and obvious causes.' " *Id.* (quoted source omitted). "A court must find a 'high degree' of necessity before concluding that a mistrial is appropriate." *Id.* (quoted source omitted).

¶ 17. In reviewing a decision declaring a mistrial, this court first determines "the level of deference that attends a circuit court's mistrial [decision]." *Seefeldt*, 261 Wis. 2d 383, ¶ 20. The level varies according to the facts of the case. *Id.*, ¶¶ 25, 30. At one end of the spectrum are situations in which a mistrial is granted because a jury cannot reach a verdict, and in those instances, great deference is accorded to the circuit court's decision. *Id.*, ¶ 25. At the other end of the spectrum are cases involving the unavailability of critical prosecution evidence or involving the State's use of superior resources to harass the defendant to achieve a tactical advantage. In such cases, an appellate court applies the strictest scrutiny to a circuit judge's mistrial decision. *Id.*, ¶ 26.

¶ 18. We can see a reasonable argument that the dynamics here, involving a request for a mistrial from the State based in part on the State's claim that the defense critically needed the testimony of a witness at a time when the defense said it did *not* need the witness to testify, calls for a high level of scrutiny. However, we put that question to the side. Irrespective

of the level of deference that should be accorded a circuit court's mistrial decision, an appellate court must satisfy itself that the circuit court exercised sound discretion in declaring a mistrial. *Arizona v. Washington*, 434 U.S. 497, 514 (1978).

> Sound discretion . . . requires that the [circuit court] ensure that the record reflects there is an adequate basis for a finding of manifest necessity. As such, sound discretion is more than a review to ensure the absence of a mistake of law or fact. Rather a review for sound discretion encompasses an assurance that an adequate basis for the finding of manifest necessity is on the record.

*Seefeldt*, 261 Wis. 2d 383, ¶ 37.

¶ 19. For reasons we will now explain, this court need not determine the exact level of deference due here because, regardless of the level, it is clear that the record does not reflect an adequate basis for a finding of manifest necessity warranting a mistrial.

*B. Absence of an Adequate Basis in the Record for a Finding of Manifest Necessity Warranting a Mistrial*

■■■

¶ 20. The State based its motion for a mistrial on the purported prejudice that Troka could later allege resulted from defense counsel's inability to elicit the substance of Tovar's testimony, due to counsel's failure to provide the State with a report or written summary of Tovar's opinion testimony before calling Tovar to present that opinion testimony at trial. The circuit court based its finding of a manifest necessity warranting a mistrial on its acceptance of the State's argument

that, by proceeding with the trial without Tovar's expert opinion testimony, Troka "would have a proverbial hold card: Go forward, take your chance with the trial, but have the opportunity to rely on an argument for ineffective assistance of counsel in the event that" Troka is convicted.

¶ 21. The circuit court accepted the State's argument in support of its mistrial motion based on earlier statements by defense counsel at a pretrial hearing that Tovar was one of several doctors the defense intended to consult about the medical reports recently provided by the State. As we proceed to explain, the State erroneously claimed that these pretrial statements indicated that Tovar was an "important" medical expert witness for the defense, supposedly undermining defense counsel's later statements at trial that Tovar was not an important defense witness.

¶ 22. As to the failure to produce a report by Tovar, Troka concedes that his trial counsel erred in failing to produce a report or written summary of Tovar's opinions, that this failure violated WIS. STAT. § 971.23(2m)(am), and that two of the remedies provided in WIS. STAT. § 971.23(7m)—granting a short continuance or allowing Tovar to testify and giving an adverse jury instruction regarding counsel's statutory violation—would not have "adequately cured the potential prejudice to the State."

¶ 23. However, Troka contends that the circuit court improperly rejected his third proposed remedy of withdrawing Tovar as a witness and giving a curative instruction to the jury to the effect that the defense "decided to withdraw [Tovar] and continue on with [their] case." More specifically, Troka argues that the circuit court's finding of a manifest necessity for a

mistrial fails because the record does not adequately support the court's finding that Troka could reasonably argue in a postconviction ineffective assistance of counsel claim that Tovar's testimony was critical and that, but for counsel's failure to provide the State with a report or written summary of Tovar's opinion testimony, Troka would not have agreed to proceed without Tovar's testimony. Based on our review of the record, we agree that the record does not reflect an adequate basis for the court's finding of a manifest necessity, because the court had insufficient reason to question defense counsel's clearly stated position, at the moment that mattered at trial, that Tovar's testimony was not needed.

¶ 24. At the pretrial hearing, defense counsel sought to adjourn the trial to allow Tovar to review recently disclosed medical reports. The court asked counsel what he intended to do with the recently disclosed medical reports, and counsel explained, "I specifically am going to consult with Dr. Tovar . . . . Now that I know the names of the doctors, *I plan on calling them* . . . . I think that the reports are ambiguous and so *it makes their testimony important to the defense,* in putting on a proper defense, to examine exactly what is being said in these reports, because I don't think that they necessarily categorically support the charges that are laid out here." (Emphasis added.)

¶ 25. At the trial, as summarized above, after the State objected to Tovar's testimony, the defense made clear that they did not consider Tovar's testimony necessary to the defense. Defense counsel explained that, "as to what Dr. Tovar would testify to, it's not substantive as far as, he was an expert and so not factually would we necessarily need him to continue

206

the case." Counsel noted that while Tovar was going to opine "[i]n general" on the injuries and potential causes, the defense had called two other experts who testified specifically as to those topics.

¶ 26. It was based on defense counsel's *pretrial reference to the doctors* appearing important to the defense at least at the time of the pretrial hearing, that the circuit court found that *Tovar's testimony at the time of trial* was sufficiently "important" to support an ineffective assistance of counsel claim should the trial proceed without Tovar's testimony:

> [For Troka to] forego the use of that witness would have obviously been prejudicial to [Troka] and we would have, by going forward, despite [Troka's] agreement to do such, put [Troka] in a situation where he would obviously have an ineffective assistance of counsel argument on any kind of appeal.
>
> Clearly the failure to disclose this expert witness and to provide a report of this expert witness constituted obvious deficient performance on the part of counsel and would put [Troka] in a position of, by agreeing to go forward without this witness, he would be in a position to be able to argue that he was compelled to agree to forego the use of this very important witness.

¶ 27. The circuit court followed the State's lead in focusing on defense counsel's *pretrial statements* that *the doctors* appeared important to the defense at the pretrial stage. However, *at the time of trial,* there was no showing that *Tovar's testimony* as an expert witness was important, and defense counsel explicitly took the position that it was not important. Defense counsel unambiguously stated at the time of trial,

> [W]e're prepared to withdraw Dr. Tovar as a witness. We've talked to our client and evaluated it, and what he testified to *we don't think is critical to our case* so it's a decision that we're making strategically . . . . And as to what Dr. Tovar would testify to, it's not substantive as far as, he was an expert and so not factually would we necessarily need him to continue the case [sic] . . . . And *we have had two other experts called by the defense.*

(Emphasis added.)

¶ 28. Moreover, there was no basis for the circuit court to have concluded that the record as a whole established that Tovar's testimony was critical. Defense counsel's statement at trial was consistent with defense counsel's earlier explanation at the pretrial hearing that he needed to *consult with* Tovar as to the testimony he planned to take from the examining doctors based on their reports, and that it was *those doctors' testimony* that appeared important to the defense at the time of the pretrial hearing. There is nothing in the record to call into question defense counsel's unambiguous statement at trial that *Tovar's testimony* was not critical to the defense.

¶ 29. As noted above, a circuit court should declare a mistrial only "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Mattox*, 293 Wis. 2d 840, ¶ 13 (quoted source omitted). Here, the circuit court did not take additional steps to "ensure that the record reflects there is an adequate basis for a finding of manifest necessity." *See Seefeldt*, 261 Wis. 2d 383, ¶ 37. For example, the court could have asked defense counsel to make an offer of proof as to what Tovar would have testified to and,

based on that offer of proof, gauged whether Troka might have effectively held a "hold card," as the State argued.

¶ 30. In sum, taking all the circumstances into consideration at the time of trial, there was no adequate basis for the finding of manifest necessity to declare a mistrial, where defense counsel explained at the time of trial that Tovar, the third of three medical witnesses called by the defense, was not a "critical" witness.

¶ 31. The State on appeal asserts that Tovar "presumably" and "no doubt" would have called into question the findings and opinions of the other medical witnesses who had testified at trial, but, as Troka points out, this is pure speculation. The State essentially argues that merely because Tovar was well credentialed as a physician and had a great deal of potentially relevant work experience, he must have had something important to say that would have helped the defense. This is not even the beginning of a supported argument that Tovar had testimony to give that was necessary to the defense.

¶ 32. As noted above, while the circuit court was presented with the possibility, based on defense counsel's pretrial statements about consulting with Tovar, that Tovar might end up having critical testimony for the defense, we must proceed based on the record as it exists at the time of trial. As we have explained, that record does not adequately support the circuit court's, or the State's, reliance on the mere possibility of Troka having a successful ineffective assistance of counsel argument on appeal of a conviction, in order to find a manifest necessity for a mistrial. Because there was no manifest necessity for a mistrial, a second trial would

violate Troka's right to proceed with his original jury. Therefore, Troka's motion to dismiss should have been granted.[3]

## CONCLUSION

¶ 33. For the reasons stated above, the record does not reflect an adequate basis for a finding of manifest necessity warranting a mistrial over Troka's objection, and, therefore, to retry Troka would violate his rights under the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution against double jeopardy. Accordingly, we reverse the circuit court's order denying Troka's motion to dismiss the four counts pending against him, and we remand for further proceedings on the fifth count to which he pled.

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[3] The State also asserts that, should we conclude that Troka's failure to make an offer of proof as to Tovar's testimony would preclude Troka from being able to make a viable ineffective assistance of counsel claim after conviction, we "should remand for an evidentiary hearing to establish what [Tovar's] testimony would have been." The State identifies no legal authority on point, and we reject it on that basis.