COURT OF APPEALS
DECISION
DATED AND FILED

November 10, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP111-CR**

Cir. Ct. No. **2020CM195**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY L. BLABAUM,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Iowa County: MARGARET MARY KOEHLER, Judge. *Affirmed.*

¶1 BLANCHARD, P.J.[1] Jeffrey Blabaum appeals a judgment of conviction, following a jury trial, for misdemeanor theft of movable property, and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20) because the charges in this matter are misdemeanors. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

the circuit court's order denying his postconviction motions without holding an evidentiary hearing. Blabaum argues that: (1) the State failed to establish "territorial jurisdiction" over him for the theft charge; (2) the circuit court erroneously exercised its discretion in denying a request for a mistrial based on the admission of unfairly prejudicial evidence; (3) the circuit court committed "plain error" in excluding exculpatory evidence, in allowing unfairly prejudicial evidence, and in allowing the prosecutor to make improper arguments to the jury; (4) these same "plain errors" merit a new trial in the interest of justice; and (5) the circuit court erred in failing to hold an evidentiary hearing on his motions for postconviction relief based on alleged ineffective assistance of trial counsel. I affirm for the reasons explained in the discussion below.

## BACKGROUND

¶2     Blabaum was charged with disorderly conduct, which was alleged to have occurred in November 2019, and theft, which was alleged to have occurred in May 2020, with the same person identified as the victim in both criminal complaints. The cases were initially filed separately, but the State and Blabaum agreed with the circuit court that it should join the two cases for a single jury trial.

¶3     Regarding the disorderly conduct charge, the State alleged that on November 1, 2019, Blabaum "engage[d] in violent, abusive, boisterous, or otherwise disorderly conduct under circumstances in which such conduct tended to cause a disturbance." I identify the alleged victim using the fictitious initials A.B.

¶4     A.B. testified at trial, in pertinent part, regarding the alleged disorderly conduct as follows. She and Blabaum were in a romantic relationship for six years. They lived in Milwaukee and then moved to Tennessee. The relationship ended in September 2019, at which time A.B. made a hasty departure

from Tennessee to Dodgeville, while Blabaum remained in Tennessee. She "only grabbed my clothing and my dog and drove my vehicle" from the shared residence in Tennessee, leaving her other belongings behind. On November 1, 2019, Blabaum visited A.B. at her Dodgeville residence for what A.B. thought would primarily involve Blabaum's return to A.B. of some of the property that she had left in Tennessee. Blabaum became angry and "very upset because I only wanted my things … and cared about nothing else." After walking out of the residence, Blabaum "threw" a "wooden sign" in her direction, which landed on the ground a few feet from her, and he was also, in the words of the prosecutor as affirmed by A.B., "yelling or swearing."

¶5 Turning to the theft charge, the State alleged in a criminal complaint that on May 13, 2020, Blabaum "intentionally retain[ed] possession of a bench, pictures, and personal keepsakes," which were "the movable property of" A.B., "without consent and with intent to permanently deprive the owner of possession of the property." This was alleged to be a violation of WIS. STAT. § 943.20(1)(a); because the property as a whole was valued at less than $2,500, this was charged as a misdemeanor. *See* WIS. STAT. §§ 943.20(3)(a), 939.51(3)(a).[2]

---

[2] The elements of theft are pertinent to some issues addressed below. The jury was accurately instructed that the State was required to prove each of the following beyond a reasonable doubt:

1. The defendant intentionally retained possession of movable property of another.

> The term "intentionally" means that the defendant must have had the mental purpose to retain possession of moveable property.

> "Movable property" means property whose physical location can be changed.

(continued)

¶6    A.B. testified at trial in pertinent part as follows regarding the alleged theft. On May 13, 2020, Blabaum sent a text to A.B. that included a photograph of an upholstered bench, with the following text:

> Want this? I'm at Jim's. I'll be here for ten more minutes.
> It has [sic] some of your blankets and photos also. Come
> alone, it's all good[.]

A.B. had purchased the bench shown in the photo and, as of May 13, 2020, she considered it to be her possession. A.B. had previously told Blabaum that items that she wanted back from him included this bench, as well as "photos and blankets and stuff"; she also told him that he could keep various other items of hers. The "Jim" referred to in Blabaum's text was Blabaum's brother, who lived in Dodgeville.

¶7    A.B. planned to meet Blabaum as he offered in the text, and in that connection she called the local police department to request that an officer also be present. Based on her request, Officer Jared Weier was dispatched to the brother's house.

¶8    A.B. further testified that, after she arrived at the brother's house at the appointed time, Blabaum arrived, driving a pickup truck with a trailer in tow. It looked to A.B. from the photo in Blabaum's text that the bench was located in a

---

2. The owner of the property did not consent to the retention of the movable property.

3. The defendant knew that the owner did not consent.

4. The defendant intended to deprive the owner permanently of the possession of the property.

*See* WIS JI—CRIMINAL 1441.

trailer when the photo was taken. She believed that her bench was inside the trailer that Blabaum brought to the meeting based on the contents of the text, the accompanying photo, and the appearance of the trailer at the appointed time and place. But the trailer was not opened and A.B. was never able to directly confirm what was inside the trailer.

¶9 A.B. further testified that, after arriving on the scene, Blabaum "got very mad because I had brought a police officer with me and [Blabaum] said he would not give me my belongings. He would not get out of the truck and he eventually drove off." Before driving off, Blabaum "said he was going to destroy … or burn … and take off with" her property.

¶10 After 24 hours passed, with no further contact from Blabaum regarding the property, A.B. told the police that she had not received her property back from him. She never did get back from Blabaum the property she sought, except some of her high school yearbooks.

¶11 Blabaum did not testify at trial, and the defense did not call any witnesses.

¶12 The jury found Blabaum not guilty on the disorderly conduct charge and guilty on the theft charge.

¶13 Represented by new counsel, Blabaum filed a motion for postconviction relief alleging four instances of ineffective assistance of trial counsel. The circuit court held a hearing on this motion and gave oral rulings explaining why the court rejected each claim of ineffective assistance, without the need to hear evidence. Blabaum appeals.

## DISCUSSION

¶14    I address in turn Blabaum's challenges to the theft conviction, providing additional background information as necessary to explain the arguments of the parties and my decisions.

## I.    TERRITORIAL JURISDICTION

¶15    Blabaum argues that the State failed to establish "territorial jurisdiction" over him for the theft charge.  This argument lacks merit.

¶16    In a criminal prosecution, the State must establish "'its territorial jurisdiction over a defendant for charged crimes'"—the "territory" being all land within the geographical boundaries of the state of Wisconsin, which of course includes Dodgeville.  *See State v. Anderson*, 2005 WI 54, ¶22 n.5, 280 Wis. 2d 104, 695 N.W.2d 731 (quoting *State v. Brown*, 2003 WI App 34, ¶25, 260 Wis. 2d 125, 659 N.W.2d 110); *see also* WIS. STAT. § 939.03(1)(a) (territorial jurisdiction established if the defendant is alleged to have committed a crime, "any of the constituent elements of which takes place in this state").  "Territorial jurisdiction is an issue for the jury if it involves unresolved factual disputes; however, whether Wisconsin has jurisdiction under the law for a crime based on an undisputed set of facts is an issue of law" that is reviewed de novo.  *Anderson*, 280 Wis. 2d 104, ¶22 n.5 (citing *Brown*, 260 Wis. 2d 125, ¶¶25-27).

¶17    Blabaum acknowledges all of the following:

- Given the elements of the offense of theft, the State could establish territorial jurisdiction through proof that Blabaum retained A.B.'s property while the property was located in Wisconsin.

- Territorial jurisdiction may be proven through circumstantial evidence, and therefore it is not necessarily fatal to the State's position on this

issue that there was no evidence that anyone actually observed A.B.'s belongings inside the trailer that Blabaum towed to his brother's house.

- The State presented evidence that Blabaum sent the text described above and that he arrived at the time and place (in Dodgeville) that he had designated in the text for the announced purpose of returning to A.B. the bench and other items of her property.

Taking these acknowledgements together, I conclude that the text, when considered together with other evidence, provided a strong basis to establish territorial jurisdiction. Blabaum makes two counterarguments, both without merit.

¶18 First, Blabaum purports to rely on the corroboration rule. Under this rule, a conviction cannot rest solely on a defendant's confession. *See State v. Verhasselt*, 83 Wis. 2d 647, 661, 266 N.W.2d 342 (1978); *see also State v. Bannister*, 2007 WI 86, ¶26, 302 Wis. 2d 158, 734 N.W.2d 892 ("'If there is corroboration of any significant fact, that is sufficient.'") (quoted source omitted). Blabaum argues that his text to A.B. offering to return property to her is in the nature of an admission, "which would require additional corroboration to prove the commission of a crime." I assume without deciding that the corroboration rule squarely applies in the context of determinations of territorial jurisdiction. But this assumption does Blabaum no good because the admission here was corroborated in multiple ways. This included A.B.'s testimony about her history with Blabaum and about her expressions to him of continuing interest in getting back some of the property she left with him when she hastily left Tennessee. It also included multiple sources of evidence regarding Blabaum's conduct, both in allegedly initially offering to return property to her on November 1, 2019, and then his alleged conduct on May 13, 2020, including allegedly telling her in anger that he was going to destroy her property.

¶19    Second, Blabaum asserts that A.B. "did not testify that she had any familiarity with the trailer that Blabaum was towing." Blabaum fails to explain how it could be fatal to territorial jurisdiction here if A.B. had never seen this particular trailer before Blabaum pulled up with it. Having seen the photo sent by text showing the bench seemingly sitting on the floor of a trailer, she would not have been surprised to see him towing a trailer when he arrived for the planned property return that he had just set up by text.

## II.    MISTRIAL MOTION

¶20    Blabaum argues that the circuit court erroneously exercised its discretion in denying Blabaum's request for a mistrial based on the admission of unfairly prejudicial evidence. I conclude that the record does not support a conclusion that the court erroneously exercised its discretion, even when the court's challenged ruling is subjected to "strict scrutiny."

¶21    The decision to grant or deny a motion for a mistrial is within the circuit court's discretion. *State v. Doss*, 2008 WI 93, ¶69, 312 Wis. 2d 570, 754 N.W.2d 150. The court "'must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial.'" *Id.* (quoted source omitted). Such a decision will not be reversed absent the identification of an erroneous exercise of discretion. *Id.*

¶22    Blabaum argues that the basis for his mistrial motion was, in the words of *State v. Bunch*, 191 Wis. 2d 501, 507, 529 N.W.2d 923 (Ct. App. 1995), "overreaching or laxness," by the prosecution, and that therefore I must give the court's challenged ruling "strict scrutiny out of concern for the defendant's double jeopardy rights." *Id.* It is not clear to me that Blabaum properly relies on *Bunch*. He leaves completely unaddressed how, in this particular context, "overreaching

or laxness" are to be proven or what "strict scrutiny" means. But for purposes of resolving this appeal I assume without deciding, in Blabaum's favor, that: the prosecutor posed questions that were improperly designed to illicit prejudicial testimony; this amounted to "overreaching or laxness"; and "strict scrutiny" in this context means that the challenged ruling must appear to be correct in all respects and to have been the only reasonable decision available to the circuit court under the circumstances.

¶23 The following is additional background bearing on this issue.

¶24 At one point in her testimony, A.B. testified as follows in response to questions from the prosecutor regarding her departure from Tennessee for Wisconsin:

> Q: It sounds like you made a hasty departure, is that safe to say?
>
> A: Yes.
>
> Q: And why is that?
>
> A: Because he has laid hands on me before and I was—

Counsel for Blabaum objected. The circuit court sustained the objection, after which the following exchange occurred, without objection by the defense:

> Q: So, it is safe to say you felt you needed to leave hastily from Tennessee, correct?
>
> A: Correct.

¶25 A short time later, still during the prosecutor's direct examination of A.B., there was the following exchange regarding the text message that Blabaum sent her to set up the property-return meeting:

Q:      [W]hat was going through your mind when you got this text message requesting that you show up at [Blabaum's] brother's place alone?

A:      I was very concerned since [Blabaum emphasized] the alone part and his brother had also text messaged my father that day that same night, telling [A.B.'s father] to have me go to [the brother's] house alone.

Q:      So, you were fearful of going to [the brother's] place alone?

A:      Correct.

Q:      Why is that?

A:      Just because of the past physical contact that we have had.

Defense counsel objected. In front of the jury, the court sustained the objection and ordered the testimony "stricken."

¶26    After the court excused the jury for a brief period, defense counsel made the following argument for a mistrial:

> I don't think that bell can be unrung. I think it's overly prejudicial and we wouldn't be able to get a fair and impartial jury. She['s] testifying and I realize the objections have been sustained, but the jury still heard it and especially the second time, that there was physical abuse. That shouldn't be in evidence and I don't think a curative instruction would be sufficient, so I'm making that motion.

¶27    The prosecutor argued that, given the non-specific nature of A.B.'s testimony, a curative instruction would be adequate to address the concern of prejudice. The circuit court agreed with this position. The court also cautioned the prosecutor to prevent A.B. from "go[ing] down that path anymore" and

10

directly instructed A.B. that she was "not to refer to any other[-]acts evidence that may have occurred between you and Mr. Blabaum."[3]

¶28    When the jury returned to the courtroom, the court immediately gave it the following instruction: "The motion of [counsel for Blabaum] was sustained. The question of counsel and the answer of the witness are to be stricken and you are to disregard that."

¶29    Subjecting the circuit court's ruling to "strict scrutiny," I conclude based on the following factors that the court did not erroneously exercise its discretion in denying the mistrial motion. *See* *State v. DeLain*, 2004 WI App 79, ¶¶25-26, 272 Wis. 2d 356, 679 N.W.2d 562 (concluding that circuit court did not erroneously exercise its discretion in denying a motion for mistrial based on "isolated nature" of prosecutor's use of impermissible "golden rule" argument, the fact that the prosecutor withdrew the improper argument after objection, and a court instruction that would weigh against reliance on the improper argument). First, while A.B. referenced Blabaum "la[ying] hands on" her and "physical contact," the testimony  was short and non-specific about the timing and nature of alleged conduct of Blabaum.  Second, there were immediate objections which were each sustained by the court.  Third, after the second piece of testimony, the jury was specifically directed to ignore the testimony, and juries are presumed to follow instructions by the court.  *See* *State v. Miller*, 2012 WI App 68, ¶22, 341 Wis. 2d 737, 816 N.W.2d 331 (jurors presumed to follow court instructions).

---

[3] "Other-acts evidence" refers to evidence of "other crimes, wrongs, or acts" that are separated in time, place, or manner from the events alleged in the criminal charges.  The admissibility of such evidence is governed by WIS. STAT. § 904.04(2)(a) and case law that includes *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

11

¶30     In his opening brief, Blabaum briefly suggests that the prejudicial effect of this testimony was amplified by the fact that Blabaum is significantly older than A.B., but he fails to develop an argument on the age-disparity topic. Further, after the State argues that there was nothing about the age disparity that could matter on this issue, Blabaum appears to concede the point by not addressing it in his reply brief.

¶31     Blabaum also alludes to the fact that Officer Weier testified briefly to the following:   (1) Weier identified Blabaum at the scene of the planned property return based on the fact that Weier "recognized him from past professional contacts," and (2) Blabaum said at the scene of the planned property return that Blabaum was "upset at [Weier's] presence" because Blabaum "was unhappy with the way a previous case was handled."  However, neither of these brief statements by Weier were objected to, and Blabaum's counsel did not refer to them in making his mistrial motion.  *See State v. Troka*, 2016 WI App 35, ¶12, 369 Wis. 2d 193, 880 N.W.2d 161 (we review circuit court's mistrial decision "based on the record before it.").

### III.   ALLEGED PLAIN ERRORS

¶32     Blabaum argues that, while the defense did not object to any of the following, the circuit court committed plain error in:   excluding exculpatory evidence; allowing unfairly prejudicial evidence; and allowing the prosecutor to make improper arguments to the jury.   We first summarize pertinent legal standards and then address the three arguments in turn.

### A. Legal Standards

¶33    Our supreme court has explained the nature of the plain error doctrine under WIS. STAT. § 901.03(4), emphasizing that the doctrine should be used to grant new trials "sparingly." *State v. Jorgensen*, 2008 WI 60, ¶¶21-24, 310 Wis. 2d 138, 754 N.W.2d 77.   The doctrine allows appellate review of "fundamental" errors that were otherwise forfeited by a party's failure to object. *Id.*, ¶21.   An error "must be 'obvious and substantial'" to be deemed plain error. *Id.* (quoted source omitted).   "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless." *Id.*, ¶23.

### B. Exculpatory Evidence

¶34    Blabaum argues that the circuit court committed plain error when it ruled that Blabaum was prohibited from testifying at trial to his understanding of the legal status of the property that A.B. left behind when she moved to Wisconsin based on a statement allegedly made by a person in Tennessee named Robert Harazin regarding a statement allegedly made to Harazin by police in Tennessee. Blabaum fails to show that, assuming without deciding that the court's ruling was error, the assumed error was fundamental, obvious, and substantial.

¶35    The following additional background is necessary to understand the argument.

¶36    The State filed a pretrial motion, based on the evidentiary rule against the admission of hearsay statements, requesting that both Blabaum and Robert Harazin "be ordered not to testify as to what [either of them] was advised by a law enforcement officer" on the following topics:  that "property owned by"

A.B. "was abandoned," that Blabaum and A.B. "now co-owned the property because of its abandonment," or that Blabaum "could do whatever he wanted with the property." This pretrial motion was based on an attached police report generated by Officer Weier.

¶37 The police report stated that Weier had interviewed Harazin, who made statements to Weier that included the following: Blabaum and A.B. had rented a trailer from Harazin; A.B. "moved out" of the trailer they shared "around July 2019"; "later in 2020" A.B. returned with friends "to retrieve her property" from the trailer while Blabaum still resided there; Blabaum asked Harazin not to allow A.B. into the trailer and as a result Harazin called local law enforcement to the scene; responding police told Harazin "that because of the length of time [A.B.] had left her property" at the Tennessee trailer home, her personal property "was considered abandoned and she had given up rights to it."

¶38 Weier's report did *not*: purport to quote communication between Harazin and Blabaum regarding the legal status of the property; purport to quote Blabaum on that or any other topic; or explain what Tennessee legal authority—or any police policy or practice—that the unidentified Tennessee police officers allegedly relied on for the concept that A.B. had in some sense abandoned property.

¶39 As the trial was about to get underway, the circuit court turned to the State's motion in limine, which the court characterized as being directed at testimony of Harazin—that Harazin "not be allowed to testify as to anything he was told by law enforcement." The prosecutor agreed, saying that the motion was "[b]asically a straight line hearsay objection to any testimony of that sort." The court turned to defense counsel for a response. Counsel responded that Harazin

was "not going to testify[]" because he "wasn't available." The court replied: "All right. So, [the State's] motion is granted." After the prosecutor clarified that he sought an order excluding potential testimony by Blabaum on this topic, as opposed to only testimony by Harazin, defense counsel agreed that the motion could be granted in this respect as well, because what Officer Weier reported that Harazin said that unidentified police officers in Tennessee had told Harazin "isn't admissible."

¶40     There was no proffer from Blabaum's counsel as to what Blabaum might testify to related to alleged statements by Tennessee police officers or related to relevant property law, or police policies or practices, in Tennessee.

¶41     Whatever else I might decide or assume on this topic, Blabaum's plain error argument fails for at least the simple reason that the nature of the "excluded testimony" at issue here is not clear. He fails to provide a factual basis supporting the premise that Blabaum, if he had elected to testify, had anything of substance to convey to the jury on the topic of A.B.'s ownership of property that included the bench that was in the photo he texted to A.B. The argument appears to rest entirely on a vague statement attributed to unidentified "local law enforcement" that does not cite to a proposition of common law or statutory authority of any state, or to a police policy or practice. Further, it also contains no reference to any knowledge or reasonable belief of Blabaum. Beyond all that, when compared with extremely clear admissions made by Blabaum in the form of his text to A.B. and his alleged admissions at the planned property return meeting, any such testimony would presumably have had little or no weight. Notably, the circuit court did *not* rule that Blabaum could not testify to his knowledge of the history of A.B.'s belongings and where they were located when, or regarding what he did or did not bring with him to the planned property return. The court also did

not reject (because it was not presented with) a developed, supported argument that Blabaum had a viable defense based on A.B.'s alleged abandonment of property.

## C. Unfairly Prejudicial Evidence

¶42    Blabaum argues that the circuit court committed plain error based on the admission of unfairly prejudicial evidence, some objected to by the defense and some not, that he submits allowed the jury to view him "as someone who allegedly beat and attempted to manipulate" A.B. and to view him as "a habitual law breaker." The evidence at issue was the testimony of A.B. (addressed above in connection with the court's denial of the mistrial motion), Officer Weier's brief testimony about "past professional contacts" with Blabaum, including one that Blabaum was "unhappy" with (summarized above), and testimony of Officer Shane Groom that I now summarize.

¶43    Officer Groom testified that, after he investigated the November 2019 incident that resulted in the disorderly conduct charge, Groom "referred charges" to the district attorney "for disorderly conduct with the domestic modifier." Blabaum's counsel objected. The circuit court immediately ruled: "I'm going to rule that that is prejudicial. The jury is to disregard that the modifier was given."

¶44    It is difficult to discern error by the circuit court, much less error that could rise to the level of being fundamental, obvious, and substantial, particularly given the court's prompt sustaining of objections. Blabaum's argument exaggerates the nature of the evidence at issue. Accordingly, he fails to show an error of constitutional dimension, as is required to establish plain error. *See Jorgensen*, 310 Wis. 2d 138, ¶21.

16

¶45    I make two additional points beyond the related discussion already given above in affirming the court's denial of the mistrial motion. First, Blabaum fails to explain why the jury would have had reason to think that the phrase "the domestic modifier" conveyed anything other than what the jury already knew from the evidence: Blabaum and A.B. had resided together in a domestic relationship. Second, it would have been unreasonable for a jury to assume guilt on the theft charge based on Officer Weier's brief references to "past professional contacts" for purposes of explaining how he identified Blabaum; these contacts were not described, including the one contact that had allegedly made Blabaum "unhappy." It is common knowledge that citizen encounters with police can be "unhappy" for many reasons that do not reflect badly on the citizen.[4]

### D. Prosecution Arguments

¶46    Blabaum argues that the circuit court committed plain error in failing to prevent the prosecutor from, without objection by the defense, improperly commenting during the rebuttal closing argument on Blabaum's exercise of his Fifth Amendment privilege not to testify. I conclude that the prosecutor's statements were not improper under the circumstances of this case and did not violate Blabaum's Fifth Amendment right not to testify at trial.

---

[4] I do not base my conclusion on the State's argument that the jury's decision to acquit Blabaum on the disorderly conduct charge demonstrates that the other-acts evidence could not have been prejudicial. As a general rule, it is impossible to know based on a trial record why a jury reached a split verdict in a criminal case. Some compromises that are struck in the secrecy of the jury room may not be closely or predictably tied to the elements of particular offenses. If evidence has the effect of tainting a defendant's character unfairly, there can be at least the potential that this could contribute to a guilty verdict, regardless of any not guilty verdicts.

¶47 It is unconstitutional to create "a penalty" "for exercising a constitutional privilege," and therefore the prosecution may not comment on the accused's silence. *Griffin v. California*, 380 U.S. 609, 614-15 (1965). The issue is "'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *State v. Johnson*, 121 Wis. 2d 237, 246, 358 N.W.2d 824 (Ct. App. 1984) (quoted source omitted). An improper comment is one that: (1) "constitute[s] a reference to the defendant's failure to testify"; (2) "propose[s] that the failure to testify demonstrates guilt"; and (3) "must not be a fair response to a defense argument." *State v. Jaimes*, 2006 WI App 93, ¶21, 292 Wis. 2d 656, 715 N.W.2d 669. This issue presents an issue of law that is subject to de novo review. *See State v. Cockrell*, 2007 WI App 217, ¶14, 306 Wis. 2d 52, 741 N.W.2d 267.

¶48 The following is additional background on this issue.

¶49 In his closing argument, Blabaum's counsel encouraged the jury to focus on the following facts: A.B. initially left most of her belongings in Tennessee and there was no "inventory" or "valuation" of the property that was allegedly wrongfully retained by Blabaum at the time of the property return he initially proposed. The following are pertinent passages:

> The State's theory is [that] … Mr. Blabaum somehow is obligated for some reason to bring … some of [A.B.'s] stuff up from Tennessee. Why? Why is Mr. Blabaum obligated to do that?… So, did he intentionally take possession of this stuff? No. She of her own volition left it there. Did she consent to the retention of moveable property? Well, yes[,] because she left it … in Tennessee. If she didn't want it left, she would have taken it. Did he know that she didn't consent? No. He knew the opposite—that she had left the stuff there and there he is with it. So, he's in Tennessee and I guess it's the State's theory that he has to, on his own hook, absorb the time and

the financial cost to move her stuff up here. She leaves her stuff and suddenly he's obligated to move it 700 miles or however far it is from Tennessee to Southwestern Wisconsin…. We're talking about a bench. We're talking about pictures. We're talking about personal keepsakes, but there's no inventory here. There's no list. There's no valuation of any of this stuff. What personal keepsakes? What pictures? They've got a picture of a bench that is in a text that they're saying is attributed to Mr. Blabaum per the testimony of [A.B.], but it just … says, want this? I'm at Jim's. Want this? That's their proof beyond a reasonable doubt that he's retained possession of this bench that's hers and when the officer asks, hey, can you prove this is yours and she shows him this text of this picture of this bench. But, want this is different than saying … I'm keeping this even though I know it's yours. You know, the burden is on the State here to prove beyond a reasonable doubt and what have they proved? What evidence do they have that the stuff was ever even in Wisconsin besides these statements they're saying that Mr. Blabaum made to the officer, well, I'm going to burn the stuff or I'm going to destroy it. [Because] all they got is the trailer that pulls up and the officer sees that and then there's discussion and then he leaves…. Ultimately, this stuff was left in the state of Tennessee. How is it then that Mr. Blabaum is suddenly under an obligation to move all this stuff for her without any payment or consideration or anything and that is stuff that I submit to you that … [t]he State hasn't proved the sufficient elements beyond a reasonable doubt …. You know, it's no easy thing to pack up people's stuff and to move it and to drive it. I just don't see how the State has met its burden here…. Mr. Blabaum was left with the stuff there in Tennessee and he comes back up here ….

¶50     The prosecutor's rebuttal closing argument included the following, with emphasis now added to the passages challenged by Blabaum:

[W]e're hearing something strange about the property being in Tennessee. I don't know where that's coming from. It's not in the evidence here. All I know is, Mr. Blabaum sent [A.B.] a text saying here's your property including blankets and pictures. Come and get it. Come alone. Now, you know, he … show[s] up in a trailer. *Well, of course, it's in the back of the trailer. There's nothing here that says otherwise and why in the world would he say otherwise?* Come alone! And then he comes back and says, well, I'm going to take off and leave because you brought an officer here to the exchange. He knew the

property was hers and again, what the Defense would have you believe is just because you have a break up and you leave and there's some property left behind, oh! It's gone forever. No longer yours. That's nonsense. He knew it was hers and he texted her back and said, do you want your property? It was her property. He admitted it was her property. *I don't care if it was a day, a month, a year or whatever else, it was her property and there was no testimony, no evidence offered otherwise that would contradict the proof that the State has provided.* He is guilty of retaining her property knowing that she wanted her property back and denying her that property because an officer showed up. That's not reasonable and there's no reasonable doubt here, folks.

¶51 Regarding the first emphasized passage, when construed in context, I conclude that the only reasonable interpretation is that this was not a reference to the defendant's failure to testify and did not propose to the jury that the failure to testify demonstrates guilt. I further conclude that this passage was a fair response to a defense argument. The prosecutor was attempting to redirect the jury's attention from defense counsel's references to events in Tennessee because they were irrelevant (from the State's plausible point of view) and instead to direct its attention on evidence surrounding Blabaum's text proposing to return the bench and other property to A.B. The "otherwise" concept may have been awkwardly expressed. But the concept was that the Tennessee references were purely a red herring that did not involve evidence that could matter and that the text Blabaum sent A.B. was unambiguous—that there is no other way to interpret the text but in a way that incriminates Blabaum on elements of theft. "[I]t is proper for the district attorney to point out generally that no evidence has been introduced to show the innocence of the defendant." *Bies v. State*, 53 Wis. 2d 322, 325, 193 N.W.2d 46 (1972).

¶52 Turning to the second emphasized passage, my analysis is similar. These comments also served to "point out generally that no evidence has been

introduced to show the innocence of the defendant." *See id*. Further, this passage was a fair response to a defense argument for acquittal on the ground that A.B. had left the property at issue behind in Tennessee for an extended period and that also attempted to minimize the significance of the text inviting A.B. to a property return. The prosecutor's message in response, based on the State's plausible theory of the case, was the following: the only relevant evidence before the jury bearing on the status of the property at the time of the charged theft pointed to Blabaum's intentional retention of A.B.'s property without her consent, knowing that she did not consent, intending to permanently deprive her of its possession.

### E. Interest Of Justice

¶53    Blabaum argues that "individually and cumulatively" the instances of plain error that he alleges require a new trial in the interest of justice. "[I]f it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried," we may reverse the judgment or order appealed from, "regardless of whether the proper motion or objection appears in the record." WIS. STAT. § 752.35. A miscarriage of justice may be found when there is "a probability of a different result on retrial such that a new trial in the interest of justice is warranted." *See State v. Kucharski*, 2015 WI 64, ¶46, 363 Wis. 2d 658, 866 N.W.2d 697. "The power to grant a new trial when it appears the real controversy has not been fully tried 'is formidable, and should be exercised sparingly and with great caution.'" *State v. Sugden*, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (quoted source omitted). Appellate courts are to exercise their power to grant a discretionary reversal only in exceptional cases. *Id.*

¶54    For the reasons explained above in addressing each allegation of plain error, this is not the exceptional case in which the record establishes that the real controversy has not been fully tried or that there was a miscarriage of justice.

### IV.    FAILURE TO HOLD HEARING ON POSTCONVICTION CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

¶55    Blabaum argues that the circuit court erred in failing to hold an evidentiary hearing on his motions for postconviction relief based on multiple forms of alleged ineffective assistance of trial counsel.

¶56    Blabaum's appellate briefing on this set of topics is cursory at best. It purports to rely on "incorporation by reference" of arguments made in his extensive circuit court briefing.[5]  I could reject this argument based on a lack of development; among other problems, it fails to provide the State with developed appellate arguments to which it could properly respond.  But the State does not argue that this issue should be resolved based on a lack of development.  I have done my best to account for what appears to be the substance of Blabaum's intended arguments.[6]

---

[5] In two pages of cursory appellate argument, Blabaum purports to incorporate by reference 26 pages of argument submitted to the circuit court in support of the postconviction motion.

[6] I remind Blabaum's counsel that this type of incorporation by reference is not an appropriate form of appellate advocacy.  In another case, the argument might be rejected for lack of development.  Among other problems, such incorporation by reference "creates the potential for exceeding the allowable length of briefs and violates the rule addressing the required form of appellate arguments." *Bank of America NA v. Neis*, 2013 WI App 89, ¶11 n.8, 349 Wis. 2d 461, 835 N.W.2d 527; *see also* WIS. STAT. RULE 809.19(1)(e) and (8)(c).

¶57    In his postconviction motion, Blabaum argued that trial counsel was ineffective in failing to:  request the sequestration of witnesses during trial; conduct a more extensive voir dire of prospective jurors; call Harazin as a witness; and object to joinder of the disorderly conduct and theft cases, in part because this would have allowed him to prevail in objecting to other-acts evidence in the theft case when it was tried separately from the disorderly conduct case.

¶58    A defendant claiming ineffective assistance must show both that counsel's performance was deficient and that, as a result, the defendant was prejudiced.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Thiel*, 2003 WI 111, ¶18, 264 Wis. 2d 571, 665 N.W.2d 305.  Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness."  *Thiel*, 264 Wis. 2d 571, ¶19.  Counsel's deficient performance is constitutionally prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  The defendant bears the burden on both elements.  *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶59    In order to be entitled to an evidentiary hearing on a postconviction claim alleging ineffective assistance of counsel, the defendant has to allege sufficient material, nonconclusory facts, which, if true, show that he or she is entitled to relief.  *See State v. Sulla*, 2016 WI 46, ¶¶26-27, 369 Wis. 2d 225, 880 N.W.2d 659.  This presents an issue of law, which is reviewed de novo.  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  "[I]f the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the

defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing." ***Sulla***, 369 Wis. 2d 225, ¶27 (quoted source omitted). In that situation, the circuit court decision is reviewed for an erroneous exercise of discretion. ***State v. Howell***, 2007 WI 75, ¶¶75, 79, 301 Wis. 2d 350, 734 N.W.2d 48.

¶60 *Sequestration*. Blabaum's postconviction motion asserted that, because trial counsel did not request an order for witness sequestration, "the prosecutor successfully elicited testimony from three witnesses, based on their prior in[-]court observation[s] of other State's witnesses, which effectively bolstered the credibility of damaging testimonial evidence," and that "the credibility of witnesses was a critical and decisive issue." In addressing the postconviction motion, the circuit court ruled in pertinent part that Blabaum failed "to show that the lack of sequestration created corroborating and material evidence that would not have otherwise existed had the witnesses been sequestered." I agree with this determination; the assertions were speculative and conclusory. Further, at least regarding the theft charge, Blabaum fails to show why the court should have thought that credibility of any witness was especially at issue in the theft case; the record suggests the opposite. Blabaum for the most part did not dispute the truth of any witness's testimony regarding the allegations supporting the theft charge.

¶61 *Voir dire*. Blabaum's postconviction motion argued that it was ineffective for trial counsel not to have specifically asked during voir dire if potential jurors had "met Mr. Blabaum before," because there was a later suggestion that one juror knew Blabaum. But potential jurors *were* asked if they were acquainted with Blabaum or had engaged in business dealings with him. I agree with the circuit court that Blabaum's argument rests on a distinction that

could not possibly have represented deficient performance. Blabaum fails to explain how an evidentiary hearing could have given life to a meritless argument.

¶62 *Harazin as a potential witness.* Blabaum's postconviction motion argued that it was ineffective for trial counsel not to have either objected to the State's pretrial motion involving the alleged statements of unidentified Tennessee police officers to Harazin, discussed above, or to have requested a continuance of the trial in order to assure Harazin's appearance as a witness. Apparently, the purpose would have been to call Harazin to relate what he was allegedly told by Tennessee police officers on an abandonment concept. But I have explained my conclusion that the nature of the "excluded testimony" at issue here is not clear. More to the point on this issue, it was also not clear at the time the circuit court was deciding whether an evidentiary hearing was required.

¶63 *Joinder and other-acts evidence.* Blabaum's postconviction motion asserted that it was ineffective assistance for trial counsel not to oppose joining the disorderly conduct and theft cases together for one jury trial, suggesting that one advantage for the defense in conducting two trials is that it would have been easier for trial counsel to successfully argue against the admission of purported other-acts evidence. As for the joinder issue, the circuit court made a well-supported determination in addressing the postconviction motion that the facts related to the disorderly conduct charge and those related to the theft charge heavily overlapped. Neither in the circuit court, nor now on appeal, has Blabaum seriously contested that determination. It is difficult to discern what might remain regarding the other-acts concept if joinder was appropriate. In any case, it appears that Blabaum on appeal fails to develop a related argument that I do not reject or deem to be of little consequence in separate discussion above.

**CONCLUSION**

¶64    For all these reasons, I affirm the judgment of conviction and the circuit court's order denying postconviction motions without holding an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.